Argued and submitted September 4, 1984, reversed and remanded February 20, 1985

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# SANDRA ANN SEVERSON,
*Petitioner on Review.*

(C82-12-39047; CA A28388; SC S30516)

696 P2d 521

Alice D. Ellis, Portland, argued the cause and filed the petition for petitioner on review. Paul S. Petterson, Portland, filed the brief for petitioner in the Court of Appeals.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the briefs were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem.

ROBERTS, J.

## ROBERTS, J.

The issue presented is whether a psychiatrist's report should have been admitted into evidence as an adoptive admission. The report was used in a pretrial hearing on defendant's motion to suppress statements she made to the police. The question was whether defendant was competent to waive her *Miranda*[1] rights. After reviewing the report, the trial judge ruled that defendant was competent and declined to suppress her statements. Defendant was convicted of robbery in the first degree and she appeals.

Two masked men robbed a convenience store and left in a car driven by a third person. Soon thereafter the car was stopped by the police, who seized evidence of the robbery and arrested the three occupants, including defendant, who was driving. Defendant was given the *Miranda* warnings but, nonetheless, told the police that she had gone into the store to "case it" before the robbery, that the two passengers had robbed the store and that she had driven the car at their direction. Defendant contends that because of her low level of intelligence she was unable to understand and appreciate the *Miranda* warnings. If that were true her statements would be suppressed.

At the initiation of defendant's counsel, Dr. Donald True, a clinical psychologist, evaluated defendant to determine her level of intelligence. Dr. Guy Parvaresh, a psychiatrist, examined defendant for the state. Both doctors made written reports. Prior to the pretrial hearing, defendant filed a written objection to the state's examiner, including in the affidavit of counsel a statement from Dr. Parvaresh's report which stated:

"In psychiatric examination she was appropriately dressed. She appears younger than her stated age and relates in a rather immature and at times childlike fashion. She is oriented as to place, person and time. She describes feelings of tension and particularly anxiety and panic under sufficient stress. She relates well, shows no evidence of thinking disorder. I found no indication of delusions or hallucination. Her thinking however is somewhat simple, at times concrete but certainly not psychotic. Her affect is appropriate and emotional responses adequate. She is currently not clinically

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

depressed although quite worried and apprehensive about the outcome of the trial. She describes herself as basically an insecure individual who is not always sure of herself and has very little self-confidence. Her memory seems to be good, concentration functionings are within the normal range. Her intelligence is placed at below average but certainly above true mental retardation."

Defendant objected on the grounds that the state's examiner was not "an appropriate expert" and had "not conducted an appropriate examination" because his conclusion was "not based on recognized methods of testing for said defect, but is based merely on observation and a brief interview."[2]

At the pretrial hearing Dr. True concluded "* * * that [defendant] cannot really appreciate what it means to understand her Miranda rights." According to Dr. True's testimony and his written report his conclusion was based on the administering of the Wechsler Adult Intelligence Scale, Revised, a repeat of one portion of the test, and a special test developed by Dr. True to determine "Miranda competency." Dr. True also administered tests to evaluate defendant's personality characteristics and to determine her general level of understanding of certain words. Dr. True's report, which was admitted in evidence, states: "These results clearly indicate that Ms. Severson is incompetent to understand Miranda at not only a meaningful level but the very basic level."

Dr. Parvaresh did not testify at the pretrial hearing. When his report was offered defendant objected on hearsay grounds and the right of confrontation. The state then pointed out to the court that defense counsel had quoted from the report in his affidavit and the court agreed that defense counsel had "offered it." The court indicated that it had

---

[2] Defendant's objection to the examiner was based on ORS 161.315 which provides:

"Upon filing of notice or the introduction of evidence by the defendant as provided in ORS 161.309(3), the state shall have the right to have at least one psychiatrist or licensed psychologist of its selection examine the defendant. The state shall file notice with the court of its intention to have the defendant examined. Upon filing of the notice, the court, in its discretion, may order the defendant committed to a state institution or any other suitable facility for observation and examination as it may designate for a period not to exceed 30 days. If the defendant objects to the examiner chosen by the state, the court for good cause shown may direct the state to select a different examiner."

reviewed the portion of the opinion of Dr. Parvaresh that was furnished by defense counsel in the affidavit. The state's counsel remarked, "The only thing that's come in is what counsel has himself put in." Defendant's attorney objected to the court's consideration of Dr. Parvaresh's opinion. The court responded, "Well, I don't think you are in a position to offer it and then contend that it's not genuine." The court found defendant competent to understand the *Miranda* warnings and found that she had waived her right to silence.

After defendant was tried and convicted on stipulated facts defendant appealed, alleging, inter alia, that the trial court erred in considering the portion of Dr. Parvaresh's opinion that was a part of defense counsel's affidavit and in concluding that the inclusion of the statement in the affidavit waived defendant's hearsay objections and her statutory and constitutional rights to confront and cross-examine Dr. Parvaresh. The Court of Appeals affirmed the trial court without an opinion. 66 Or App 973, 675 P2d 520 (1984). We find that defendant did not waive her hearsay objections and, therefore, reverse.

OEC 801(4)(b)(B) provides:

"(4)   Statements which are not hearsay. A statement is not hearsay if:

"* * * * *

"(b)   Admission by party-opponent. The statement is offered against a party and is:

"* * * * *

"(B)   A statement of which the party has manifested the party's adoption or belief in its truth * * *."

The state's position is that Dr. Parvaresh's report was admissible under OEC 801(4)(b)(B) as an adoptive admission. The state contends that by virtue of the fact that the defendant offered the out-of-court declaration, defendant waived any hearsay objections she may have had because the statement was an adoptive admission of defendant.

■      OEC 801(4)(b)(B) excludes from the definition of hearsay a statement that is offered against a party and is a statement of which the party has manifested his adoption or belief in its truth. The consequence of the rule is that a statement otherwise inadmissible under the hearsay rule can

be admitted. A party may adopt a statement either expressly, impliedly, by conduct or, in a civil case, by silence. Commentary to Oregon Evidence Code 148-49 (1981). According to the state, the alleged adoption here occurred when defense counsel included Dr. Parvaresh's statement in counsel's affidavit, which was attached to the objection to the state's examiner and the motion for an order directing the state to select another examiner.

The leading case in Oregon on adoptive admissions is *Oxley v. Linnton Plywood Ass'n,* 205 Or 78, 284 P2d 766 (1955). In *Oxley,* defendant objected to the admission into evidence of a report made as the result of a "timber cruise" to establish the amount of timber on land purchased by defendant. Defendant had used the report at the time of the purchase, it had filed it as a part of documentary evidence with the Securities and Exchange Commission, and defendant had referred to certain information from the report in the prospectus of its proposed operation. At trial defendant sought to dispute the amount of timber on the land claiming that it was other than as stated in the report. The court held that under the facts and circumstances of the case, "[the report's] admission in evidence was justified under well-recognized exceptions to the hearsay rule. * * * By the use it made of the * * * report, defendant clearly adopted it as its own." 205 Or at 101.

*Oxley* relied on Wigmore for the proposition that "[t]he written statements of a third person may be so dealt with by the party that his assent to the correctness of the statements may be inferred, and they would thus by adoption become his own statements." 4 Wigmore, Evidence 129, § 1073 (Chadbourne rev 1972). (Emphasis from original omitted.) Included in the kinds of documents coming within the rule are "documents made use of." As to this kind of document Wigmore states: "The party's use of a document made by a third person will frequently amount to an approval of its statements as correct, and thus it may be received against him as an admission by adoption." *Id.* at 138. (Footnote and emphasis from original omitted.)

According to McCormick, Evidence 797, § 269 (3rd ed 1984), "[t]he circumstances surrounding the party's declaration must be looked to in order to determine whether the

repetition did indicate an approval of the statement." (Footnote omitted.) As the following cases point out, the circumstances must indicate that the party used the statement or document in such a way as to indicate approval of or agreement with the statement.

Rule 801(d)(2)(B) of the Federal Rules of Evidence[3] is essentially the same as our OEC 801(4)(b)(B). In *United States v. Morgan,* 581 F2d 933 (DC Cir 1978), the court, in applying the federal rule, held that where the government had asserted in a sworn affidavit to a magistrate the reliability and credibility of certain statements made by an informant, the government could not maintain an objection to the subsequent introduction of those statements on the grounds that they were hearsay. 581 F2d at 938; *see also United States v. Costanzo,* 581 F2d 28 (2nd Cir 1978), *cert den* 439 US 1067, 99 S Ct 833, 59 LEd 2d 32 (1979); *United States v. Felix-Jerez,* 667 F2d 1297 (9th Cir 1982).

These cases share a common element. The party found to have adopted another's statement used the out-of-court declaration at one time as an assertion of fact with which the party agreed.

■ The state asserts that "[w]here the defendant, by voluntary action, places matter into evidence and thereby seeks to obtain an advantage from it, he has waived his right of confrontation as to that evidence and cannot complain, on that ground, about its subsequent consideration." The test is not whether a party sought to obtain an advantage by submitting the statement into evidence. It is fair to assume that a party seeks to obtain an advantage from anything he or she places into evidence. The test is how the party actually used the statement. The party must engage in conduct indicating agreement with or approval of the contents of the statement.

---

[3] Federal Rule of Evidence 801(d) provides:

"(d)   Statements which are not hearsay. A statement is not hearsay if

"* * * * *

"(2)   Admission by party opponent. The statement is offered against a party and is * * *

"(B) a statement of which he has manifested his adoption or belief in its truth, * * *.

If a party never indicates agreement with a hearsay declaration, it cannot be an adoptive admission.

*Krantz v. John Hancock Mutual Life Ins. Co.,* 335 Mass 703, 141 NE2d 719 (1957), was an action by the beneficiary wife to recover under a double indemnity provision of an insurance policy by reason of the death of the insured by drowning. Plaintiff wife submitted as proof of the death a certified copy of the record of death, stating that she intended to adopt and admit only the information establishing death by drowning and deleting that portion of the report indicating the manner of death, *i.e.,* by suicide. The court held that plaintiff could make use of the official document to show death by drowning without adopting that part which was in fact disclaimed by the plaintiff. Similarly, in *United States v. Lilley,* 581 F2d 182 (8th Cir 1978), the court held that a wife had not adopted her husband's statement because she specifically stated she wanted to tell the agent the way she recalled an incident. The wife then gave a written statement that contradicted her husband's statement in virtually every material respect. 581 F2d at 187.

Federal trial courts use the same rationale. In *United States v. American Tel and Tel Co.,* 516 F Supp 1237 (D DC 1981), the court considered whether the government, the plaintiff in an anti-trust suit, had adopted third party documents. The court rejected defendant's claim that the government adopted these documents because it was aligned in interest with AT & T's competitors, who had developed the documents: "The government cannot be held to have adopted the contents of documents in the files of others, no matter how aligned in interest they might be, without specific proof of such adoption * * *." 516 F Supp at 1239. In another anti-trust case, *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 505 F Supp 1125 (ED Pa 1980), plaintiffs claimed that defendants had adopted certain third party documents because they made reference to them in an answer to an interrogatory. The court quoted Judge Weinstein for the proposition that the federal rule "requires evidence that the party's conduct was 'intended' as an adoption." 505 F Supp at 1243. Weinstein, Evidence 801-144 (1984). The court concluded that it must examine the context of the question and answer, and before a document could be used as an admission, the context "must manifest an 'adoptive' rather than merely a 'referential' connotation." 505

F Supp at 1244. In a patent infringement case, *Nat. Research Devel. v. Great Lakes Carbon,* 410 F Supp 1108 (D Del 1975), defendants claimed that plaintiff adoptively admitted the meaning of a contested term when it made reference to the inventor's notebook in answer to defendants' interrogatories. The court decided that the reference was "a mere designation of material in response to a directive specifically demanding such referencing." 410 F Supp at 1114 n 20. The court indicated that such a reference can never constitute an adoptive admission unless it is possible to find without ambiguity that the party intended to "embrace the truth" of the designated document. *Id.*

■■    The instant case is similar to *Krantz v. John Hancock Mutual Life Ins. Co., supra,* and *United States v. Lilley, supra,* in that defendant was specifically objecting to and contradicting the statement. There is nothing to indicate that defendant "intended" to adopt the statement or that she "embraced the truth" of the report. To the contrary, Dr. Parvaresh's statement was included in the affidavit not to allege its truth or to state it as a fact but to challenge the truth of the statement. Defendant's counsel stated in the affidavit that Dr. Parvaresh was not an appropriate expert and that the conclusion he drew regarding defendant's competency was not based on an appropriate examination or recognized methods of testing. The inclusion of the portion of Dr. Parvaresh's report in the affidavit was intended simply to point out to the court what Dr. Parvaresh concluded about defendant and the methods he used to arrive at his conclusion. In this way, defendant was able to demonstrate to the court why it should appoint another examiner. It is clear that "[b]y the use [defendant] made of" Dr. Parvaresh's report, she in no way indicated her agreement with or approval of its contents. *Oxley v. Linnton Plywood Ass'n, supra,* 205 Or at 101. We hold that there was no adoptive admission on the part of defendant.[4]

---

[4] The state also suggested during arguments that Dr. Parvaresh's statement was admissible under OEC 801(4)(b)(A) because the motion to which the affidavit was attached could be considered a part of the pleadings and therefore was defendant's own statement, and that it was admissible under OEC 801(4)(b)(C) because defendant authorized the statement. OEC 801(4)(b)(A) and (C) provide:

"(4)  Statements which are not hearsay. A statement is not hearsay if:

"* * * * *

The state asks us, nonetheless, to hold any error harmless because it contends that the trial court relied on other information in determining that defendant was competent to understand the *Miranda* warnings.

■ The error was not harmless because the trial judge made it a matter of record that he was aware of Dr. Parvaresh's qualifications as a licensed physician specializing in psychiatry and that he had appeared before the judge many times and had "spent some percentage of his time in legal matters." In reaching his decision on defendant's competence to waive her constitutional rights, the judge reviewed Dr. Parvaresh's report and referred to it specifically. It is apparent that the trial judge relied on it, at least in part, to find defendant competent to waive her rights.

Reversed and remanded.

---

"(b)  Admission by party-opponent. The statement is offered against a party and is:

"(A)  That party's own statement, in either an individual or a representative capacity;

"(\* \* \* \* \*

"(C)  A statement by a person authorized by the party to make a statement concerning the subject \* \* \*."

We reject the state's belated arguments that the statement was the party's own statement because it was a part of the pleadings, or because the lawyer was a person authorized to make the statement. Clearly it was neither for much the same reasons we have discussed in determining whether the statement was an adoptive admission.