Argued and submitted September 5, 1990, the decision of the Court of Appeals and the judgment of the circuit court affirmed March 21, 1991

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JOHN HOWARD CARLSON,
*Petitioner on Review.*

(TC 10-88-07520; CA A51225; SC S36928)

808 P2d 1002

Robert C. Homan, Staff Attorney, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the petition for petitioner on review.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the

response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

UNIS, J.

## UNIS, J.

Defendant appeals from his convictions for unlawful possession of a controlled substance, methamphetamine, ORS 475.992(4), and endangering the welfare of a minor, ORS 163.575. The Court of Appeals affirmed without opinion. *State v. Carlson,* 100 Or App 261, 786 P2d 229 (1990). We affirm the decision of the Court of Appeals and the judgment of the Lane County Circuit Court.

### FACTS

On August 3, 1988, Officer Lewis was dispatched to an apartment in response to a report of a domestic dispute between defendant and his wife, Lisa. On his arrival, Lewis was met by Lisa, whom he later described as having a "very white" complexion, looking tired, "fairly depressed," "distraught," and "at her wit's end," being occasionally tearful, and "coming down off of methamphetamine." Also present were the minor daughter of Lisa and defendant, and Lisa's sister and her minor daughter. Defendant was not in the apartment at that time.

Lewis asked Lisa if there were any methamphetamine in the apartment. She responded by saying that "he probably took it all, but go ahead and look around; I don't care anymore." During his search of the apartment, Lewis found traces of methamphetamine on a mirror in the master bedroom that defendant and Lisa shared.

About 15 to 20 minutes later, Lewis, accompanied by a second police officer, met defendant in the parking lot of the apartment complex. Lewis noticed what appeared to be needle marks on defendant's arms. Without first advising defendant of his constitutional rights, Lewis asked defendant about the needle marks. Defendant initially responded, "Yeah, I got a few tracks," and then said that the marks were injuries that he had received from working on a car. Lisa, who was present during the exchange and close enough to hear what was being said, broke in by yelling: "You liar, you got them from shooting up in the bedroom with all your stupid friends." Defendant "hung his head and shook his head back and forth."

Defendant was not placed under arrest at that time, although he was cited for endangering the welfare of a minor.

Defendant eventually was indicted for unlawful possession of a controlled substance and endangering the welfare of a minor.

Before trial, defendant moved to suppress the statements that he made about the marks on his arms, arguing that he was in custody when he spoke with the police and was not advised of his constitutional rights. The trial court denied the motion, ruling that the interview was a "noncustodial interrogation" and admitted defendant's statements. At trial, over defendant's timely hearsay objection, the court also permitted Lewis to testify about Lisa's statement, "You liar, you got [the marks on your arms] from shooting up in the bedroom [where the methamphetamine was found] with all your stupid friends" and defendant's nonverbal reaction thereto.

## SELF-INCRIMINATION ISSUE

Defendant claims that the admission of his statements to the police officer about marks on his arms violated his right against self-incrimination under Article I, section 12, of the Oregon Constitution,[1] and the Fifth Amendment to the United States Constitution.[2] He argues that he was "in custody" when the police officer questioned him about the marks on his arm and that, therefore, he was entitled to receive *Miranda*-like warnings.[3] The admissibility of the statements requires separate inquiries under the Oregon and the United States Constitutions.

This court has stated that, "[i]n determining whether *Miranda*-like warnings were required by the Oregon Constitution, we must assess the extent to which defendant was 'in custody.'" *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990). A person who is in "full custody" must be given *Miranda*-like warnings before being questioned, and "such warnings may be required in circumstances that, although they do not rise to the

---

[1] Article I, section 12, of the Oregon Constitution provides:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

[2] The Fifth Amendment to the United States Constitution provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

[3] *See Miranda v. Arizona,* 384 US 436, 479, 86 S Ct 1602, 16 L Ed 2d 694 (1966) (a person in custody must be advised that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires").

level of full custody, create a 'setting [that is] "compelling." ' " *Id.* (citing *State v. Magee,* 304 Or 261, 265, 744 P2d 250 (1987)).

■ Defendant was questioned in the parking lot of his apartment, a familiar setting. He was not under arrest and was free to refuse to answer questions. The record does not demonstrate that the police coerced or pressured defendant to answer questions. Although he was being questioned because the police suspected that he had possessed the methamphetamine found in the apartment, the fact that police question a person as a suspect in a crime "does not inherently create a 'compelling' setting for Oregon constitutional purposes." *State v. Smith, supra,* 310 Or at 11. The circumstances of this case do not rise to the level of custody or compulsion that require *Miranda*-like warnings. Accordingly, the admission of defendant's statements did not violate defendant's rights under Article I, section 12, of the Oregon Constitution.

■ Federal law requires *Miranda* warnings when a person is subjected to "custodial interrogation." *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). As we have noted, defendant was questioned in the presence of his wife at a familiar public location, was not under arrest, and was free to refuse to answer questions. We agree with the trial court's conclusion that defendant was not subject to custodial interrogation under federal standards. *See Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977) (defendant who voluntarily went to police station and was questioned by police held not to be "in custody"). *See also Berkemer v. McCarty,* 468 US 420, 441-42, 104 S Ct 3138, 82 L Ed 2d 317 (1984) (motorist detained by a police officer pursuant to a routine traffic stop and subjected to roadside questioning and field sobriety tests was not taken into custody for purposes of the *Miranda* doctrine); *Pennsylvania v. Bruder,* 488 US 9, 11, 109 S Ct 205, 102 L Ed 2d 172 (1988) (*"Berkemer's* rule, that ordinary traffic stops do not involve custody for purposes of *Miranda,"* applied).

## EVIDENTIARY ISSUES

A. *Adoptive Admission*[4]

---

[4] The exclusion from the hearsay rule of statements of a party-opponent is broader than the concept of "admissions." There is no requirement where a party-opponent is concerned that the statement be an admission or even against interest. The word "admission" does not appear in the language of the rule (OEC 801(4)(b)). *Krause v. American Aerolights, Inc.,* 307 Or 52, 56 n 2, 762 P2d 1011 (1988).

The state first contends that Lewis' testimony about Lisa's accusatory statement ("[y]ou liar, you got [the marks on your arms] from shooting up in the bedroom [where the methamphetamine was found] with all your stupid friends") and defendant's nonverbal reaction thereto ("hung his head and shook his head back and forth") was properly admitted in evidence as an "adoptive admission" under OEC 801(4)(b)(B). Defendant responds that Lewis' testimony is inadmissible hearsay.[5] *See* OEC 802 (rule against admission of hearsay). He argues, in essence, that his head shaking manifested his rejection, rather than his adoption, of his wife's accusation.

■■ OEC 801(4)(b)(B) recognizes that a party may make an admission by adopting the statement of another person:

"A statement is not hearsay if:

"\* \* \* \* \*

"(b) The statement is offered against a party and is:

"\* \* \* \* \*

"(B) A statement of which the party has manifested the party's adoption or belief in its truth[.]"

In other words, a statement made by another person is not hearsay if the statement is offered against a party who has manifested an adoption of the statement or a belief in its truth. *State v. Severson,* 298 Or 652, 656, 696 P2d 521 (1985); Kirkpatrick, Oregon Evidence 507 (2d ed 1989). If a party manifests an *adoption* of a statement of another, the party is in the same position as if the party had personally made the

---

Nonetheless, this court has previously used the shorthand phrase "adoptive admission" to refer to statements of a party-opponent under OEC 801(4)(b)(B). We continue to do so in this opinion.

[5] Defendant also relies on ORS 136.425(2) to exclude Lewis' testimony about defendant's nonverbal reaction to Lisa's accusatory statement. That statute, which is set forth below, would apply only if defendant had been in custody. The circumstances of this case do not rise to the level of custody. ORS 136.425(2) provides:

"Evidence of a defendant's conduct in relation to a declaration or act of another, in the presence and within the observation of the defendant, cannot be given when the defendant's conduct occurred while the defendant was in the custody of a peace officer unless the defendant's conduct affirmatively indicated the belief of the defendant in the truth of the matter stated or implied in the declaration or act of the other person."

statement. The party becomes the declarant,[6] and the statement of the other person becomes the party's. Thus, the receipt in evidence of an adoptive admission involves (1) another person's hearsay statement[7] and (2) a party's own manifested adoption of the statement.

If a party manifests a *belief* in the truth of another's statement, the party is, in effect, expressing the belief that what the person said is true. Thus, the receipt in evidence of a party's manifested belief in the truth of another's statement involves (1) another person's hearsay statement and (2) a party's own manifested belief in the truth of the statement.

■ Manifestation of an adoption or belief in the truth of a hearsay statement of another may occur "expressly, impliedly, by conduct or, in a civil case, by silence." *State v. Severson, supra,* 298 Or at 657. A party *adopts* the proffered statement of another person when that party's words or conduct "indicate that [he or she] 'intended' to adopt the statement." *Id.* at 660. A party manifests a *belief* in the truth of another's statement when the party intends to embrace the truth of the statement, *i.e.,* intends to agree with or approve the contents of the statement. *Id.* at 658. If a party never intended to adopt, agree with or approve of the contents of a hearsay statement of another person, the party has neither manifested an adoption of it or a belief in its truth. *Id.* at 658-59. A mere listening presence does not indicate that a party has manifested an adoption of or a belief in the truth of another person's statement. Louisell & Mueller, 4 Federal Evidence 265, § 524.

When a party unambiguously manifests, by words or conduct, an adoption of or belief in the truth of another's statement, little difficulty arises in the application of OEC

---

[6] A "declarant" is a person who makes a statement. OEC 801(2).

[7] In the context of the definition of hearsay, as set forth in OEC 803(3), the word "statement" is defined as "(a) [a]n oral or written assertion; or (b) [n]onverbal conduct of a person, if intended as an assertion." OEC 801(1). A person makes an assertion when that person speaks, writes, acts, or fails to act with the intent to convey an expression of fact or opinion. The word assertion "simply means *to say that something is so, e.g.* that an event happened or that a condition existed." McCormick, Evidence 729-30, § 246 (3d ed 1984) (emphasis in original).

801(4)(b)(B). When it is claimed, however, that a party-litigant has manifested an adoption or a belief by nonverbal conduct and the conduct is susceptible of more than one interpretation, the analysis is more complex. In that circumstance, the court must examine the totality of the circumstances surrounding the hearsay declaration and the party's nonverbal behavior to determine whether the party intended to adopt, agree with or approve the contents of the declaration. *State v. Severson, supra,* 298 Or at 657-58.

■ The proponent of evidence under OEC 801(4)(b)(B) has the burden, after appropriate objection has been raised, of establishing the factual precondition of intent to adopt, agree, or approve. *See id.* at 658-60; Kirkpatrick, *supra,* at 508. Whether a party intended to adopt, agree with or approve another person's statement is a preliminary question of fact to be determined by the trial judge under OEC 104:

"(1) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (2) of this section. In making its determination, the court is not bound by the rules of evidence except those with respect to privileges.

"(2) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

A threshold question in this case is whether the intent to adopt, agree or approve is a preliminary question of fact for the trial judge to decide under OEC 104(1) or a question of conditional relevancy under OEC 104(2).

■ On all OEC 104(1) preliminary questions, "the judge, on request, will hold a hearing in which each side may produce evidence." McCormick, Evidence 136, § 53 (3d ed 1984). The judge, who is not bound by evidentiary rules "except those with respect to privileges," determines the weight and credibility of the evidence and decides whether the standard of proof to be observed in deciding such preliminary questions has been met.

The question of what standard of proof the judge is to use in determining preliminary questions of fact is not specified in OEC 104(1) or in any other provision of the Oregon

Evidence Code. The Supreme Court of the United States in *Bourjaily v. United States, supra,* 483 US 171, 175-76, 107 S Ct 2775, 2778-79, 97 L Ed 2d 144 (1987), resolved that issue as to FRE 104(a),[8] the federal counterpart to OEC 104(1), holding that the standard is preponderance of the evidence.[9] This court has employed the preponderance standard when the preliminary question is for the court under OEC 104(1). *See State v. Pinnell,* 311 Or 98, 109-10, 806 P2d 110 (1991) (prosecution must establish by a preponderance of the evidence that evidence of other crimes is probative of identity based on *modus operandi).* We also have applied the preponderance test in other contexts. *See, e.g., State v. Stevens,* 311 Or 119, 137, 806 P2d 92 (1991) (state must prove voluntariness of a consent to search or of a defendant's statement by a preponderance of the evidence). Accordingly, we hold that the judge is to use the preponderance standard in deciding preliminary questions of fact under OEC 104(1).

"[W]hen dealing with a matter of 'conditional relevancy,' [under OEC 104(2)] the judge still has a role, albeit a somewhat limited one, in determining whether the foundation evidence is sufficient for the jury to reasonably find the condition fulfilled." Cleary, Strong, Brown & Mostellar, Evidence, Cases and Materials 17 (4th ed 1988). If so, the item of evidence is admitted; if not, the evidence is not admitted. Legislative Commentary to Oregon Evidence Code, 40 (1981). In determining a matter of conditional relevancy under OEC 104(2),

"[the judge] 'neither weighs credibility nor makes a finding that the [party] has proved the conditional fact by a preponderance of the evidence. * * *' *Huddleston v. United States,*

---

[8] *Bourjaily v. United States,* 483 US 171, 175-76, 107 S Ct 2775, 2778-79, 97 L Ed 144 (1987), held that FRE 104(a) provides that a court is to decide by a preponderance of the evidence if the conditions of the co-conspirator exception to the hearsay rule, codified in FRE 801(d)(2)(E), are satisfied. OEC 104(1) is essentially identical to and is derived from FRE 104(a). It is, therefore, appropriate to look to federal cases in construing its Oregon counterpart. *See State v. Olmstead,* 310 Or 455, 460 n 5, 800 P2d 277 (1990) (in interpreting OEC 103(1)(b), this court found useful federal authorities interpreting FRE 103(a)(2), the federal counterpart to OEC 103(1)(b)); *State v. Moen,* 309 Or 45, 58-60, 786 P2d 111 (1990) (in interpreting OEC 803(4), federal authorities concerning the identical words of FRE 803(4) were considered).

[9] "[P]roof by a 'preponderance of the evidence' means that the [factfinder] must believe that the facts asserted are more probably true than false[.]" *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026 (1958).

485 US 681, [690,] 108 S Ct 1496, 1501, 99 L Ed 2d 771, 782-83 (1988). In performing this [Rule 104(2)] function, the court may consider only evidence admissible under the rules of evidence since the jury will have only such evidence before it when it makes the final determination of the existence of the preliminary fact. Graham, Handbook of Federal Evidence § 104.2, at 43 (2d ed 1986)."

Cleary, Strong, Brown & Mostellar, *supra,* at 17.

After the judge decides that the disputed OEC 104(1) preliminary fact has been established by a preponderance of the evidence or that the foundation evidence is sufficient for the jury reasonably to find the contested fact under OEC 104(2), either party may introduce evidence before the jury that is relevant to weight and credibility of the evidence. OEC 104(5).[10]

Few courts have addressed the issue whether manifestation of an adoption or a belief is a preliminary question of fact for the trial judge under a provision comparable to OEC 104(1) or a question of conditional relevancy under a provision comparable to OEC 104(2). Louisell & Mueller, *supra,* at 294, § 424. Courts, scholars and commentators who have spoken on the issue disagree on the answer. Some suggest that the question is one of conditional relevancy. *See, e.g., United States v. Sears,* 663 F2d 896, 905 (9th Cir 1981), *cert den* 455 US 1027, 102 S Ct 1731, 72 L Ed 2d 148 (1982); *United States v. Barletta,* 652 F2d 218, 219-20 (1st Cir 1981); Graham, Handbook of Federal Evidence 784, § 801.20 (3d ed 1991); McCormick, *supra,* at 799 n 14, § 269; *but see id.* at 135-36, § 53 (author's language suggests adoption is a question for the trial judge).

Others take the view that the issue is a preliminary question of fact for the trial judge under the federal counterpart to OEC 104(1). *See, e.g.,* Wright & Graham, 21 Federal Practice and Procedure 260, § 5053 (judge determines issues including the admissibility of hearsay); McCormick, Evidence 527, § 246 (1954) (implicit in principles stated); Garland & Schmitz, *Of Judges and Juries: A Proposed Revision of*

---

[10] OEC 104(5) provides:

"This section does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility."

*Federal Rule of Evidence 104,* 23 UC Davis L Rev 77, 84 (1989).[11]

■  For reasons that follow, we hold that whether the party intended to adopt, agree with or approve of the contents of the statement of another, a precondition to the admissibility of evidence offered under OEC 801(4)(b)(B), is a preliminary question of fact for the trial judge under OEC 104(1).

First, the wording of OEC 104(1) and the Legislative Commentary to that rule suggest that result. OEC 104(1) assigns to the trial judge the responsibility for making preliminary determinations regarding, *inter alia,* the "admissibility of evidence." Intent to adopt, agree or approve is a preliminary fact within the scope of OEC 104(1), because its proof concerns "the admissibility of evidence." The Legislative Commentary to OEC 104(1) suggests that the admissibility of hearsay is an issue of that kind. Legislative Commentary to Oregon Evidence Code at 39. Two illustrations in the Legislative Commentary of the preliminary decisions to be made by the trial judge under OEC 104(1) are whether a witness whose former testimony is offered under OEC 804(3)(a) is unavailable, as that term is defined in OEC 804(1) and (2), and whether a hearsay statement offered under OEC 804(3)(c) is against the declarant's interest. *Id.* The Legislative Commentary also says that "[OEC 104(1)] is consistent with ORCP 59B and ORS 136.310, which provide that the

---

[11] At least one commentator suggests that the third person's hearsay statement's capacity for mischief should determine by which standard the preliminary question is to be judged. *See* Louisell & Mueller, 4 Federal Evidence 292-93, § 424 ("[w]ith respect to * * * a statement * * * which positively asserts a matter damaging to the party against whom it is offered, under circumstances allowing the trier to find or assume some knowledge on the part of the speaker — the question of admissibility under Rule 801(d)(2)(B) [the federal counterpart to OEC 801(4)(b)(B)] should be left to the trial judge under Rule 104(a)[, the federal counterpart to OEC 104(1)]. And he should admit the statement only if he alone determines on the basis of at least a preponderance of the evidence that the statement fits within Rule 801(d)(2)(B)"). *See also* Kaplan, *Of Marbrus and Zorgs - An Essay in Honor of David Louisell,* 66 Cal L Rev 987, 1003 n 24 (1978), where the author states: "[T]he better rule in all such cases where the accusation would be inadmissible would be to have the judge determine the preliminary facts before the jury could hear the evidence." If the hearsay statement "poses no serious threat of mischief," however, "the question of admissibility should be handled as one of conditional relevancy under Rule 104(b)[, the federal counterpart to OEC 104(2)]." Louisell & Mueller, *supra,* at 293.

Court shall decide 'all questions of law, *including the admissibility of testimony [and] the facts preliminary to such admission[.]'* " (Emphasis added.) *Id.*

Second, "[b]asically, Rule 104 divides the determination of preliminary facts between judge and jury along the rough line between 'competence' and 'relevance,' though it does not use this terminology." Wright and Graham, *supra,* at 259, § 5053. " 'Competency,' [in this context,] refers to whether evidence is admissible under one of the policy-based exclusionary rules[, such as the rule against hearsay.]" Garland & Schmitz, *supra,* at 93. The intent to adopt, agree or approve involves a preliminary question of fact on which the competency, and thus the admissibility, of the evidence depends.

There exists an even more persuasive reason for holding that the predicate for admissibility of evidence under OEC 801(4)(b)(B) is an OEC 104(1) preliminary question of fact. The objection to admissibility, based on the rule against hearsay, furthers an important legal policy of preventing the trier of fact from considering the possible truthfulness of out-of-court statements, unless the statements have sufficient guarantees of trustworthiness. The purpose of the hearsay rule is to guard against the risks of misperception, misrecollection, misstatement, and insincerity, which are associated with statements of persons made out of court. Safeguards in the trial procedure, such as the immediate cross-examination of the witness and the opportunity of the trier of fact to observe the demeanor of the witness who swears or affirms under the penalty of perjury to tell the truth, are designed to reduce those risks.

There are several difficulties with leaving the question of intent to adopt, agree or approve to the jury as a question of conditional relevancy under OEC 104(2). If the OEC 104(2) conditional relevancy standard is employed, the legal policy underlying the hearsay rule would be furthered incompletely, if at all. The jury passing on the admission by conduct will have to hear not only evidence about the conduct and the surrounding circumstances, but also the out-of-court statement, as necessary predicates for understanding what the party allegedly adopted. For example, in the present case, the wife's accusatory statement, to which defendant's non-verbal conduct is a response, would have to be admitted to

give meaning to defendant's conduct, and the accusation is relevant to prove the truth of the accusation even though it may not be admissible for that purpose. A juror could (a) overlook the question of intent to adopt, agree or approve, and consider the truth of the matter asserted in the out-of-court statement, (b) use the out-of-court statement before considering and resolving the preliminary question of intent to adopt, agree or approve, or (c) consider the hearsay statement regardless of what conclusion is reached on the preliminary question of adoption or belief. *See* Garland & Schmitz, *supra* (pointing out these potential risks). If the evidence is inadmissible, *i.e.,* the jury does not find the preliminary fact (intent to adopt, agree or approve) to exist, preventing jury contamination may prove impossible. Garland & Schmitz, *supra,* at 94. Additionally, a general verdict would not indicate the jury's resolution of whether intent to adopt existed. A record for appellate review would require a special set of preliminary jury findings. *Id.*

In short, we believe that judicial intervention is required to prevent improper use of evidence. The preliminary question of intent to adopt, agree or approve, therefore, should be left to the trial judge under OEC 104(1).[12]

In the present case, the preliminary question of fact for resolution by the trial judge under OEC 104(1) was whether the proponent of the evidence, the state, had established by a preponderance of the evidence (more likely than not) that defendant's nonverbal reaction to his wife's accusatory statement manifested defendant's intention to adopt, agree with or approve of the statement.

In the face of his wife's accusatory statement, defendant "hung his head and shook his head back and forth." Although the record discloses that Lewis twice demonstrated defendant's nonverbal reaction, it does not disclose whether defendant's shaking his head back and forth was positive or

---

[12] This conclusion is consistent with the policy expressed in OEC 103(3):

"In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means[.]"

*See also* OEC 102 ("The Oregon Evidence Code shall be construed to secure fairness * * * to the end that the truth may be ascertained and proceedings justly determined").

negative in character. Defendant essentially testified that he had not intended to adopt, agree with or approve of his wife's remarks and that he did not see any benefit in arguing with an irrational, mentally ill and angry woman.

Various factual hypotheses are suggested by defendant's ambiguous, nonverbal reaction. Head shaking back and forth generally means a negative reply. *Village of New Hope v. Duplessie,* 304 Minn 417, 231 NW 2d 548, 552 (1975) (quoting *Bill v. Farm Bureau Ins. Co.,* 254 Iowa 1215, 119 NW2d 768, 773 (1963). "[T]he lateral motion might * * * mean merely bewilderment or confusion, an 'I don't know' answer," *id.,* a reluctance to engage in, or to continue, a dispute with his wife, a decision to stand mute in a situation that was intimidating by the presence of a police officer, or, as the state asserts in this case on appeal, an expression of dismay or resignation that his wife told the police the truth about how defendant obtained the needle marks on his arms.

■ We view the record consistent with the trial court's ruling on a preliminary question of fact under OEC 104(1), accepting reasonable inferences and reasonable credibility choices that the trial judge could have made. *See State v. Stevens, supra,* 311 Or at 127 (if the trial court does not make findings on pertinent historical facts and there is evidence from which those facts could be decided more than one way, this court will presume that the trial court found facts in a manner consistent with its ultimate conclusion); *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968) (same principle). In the circumstances of this case, defendant's nonverbal reaction is so ambiguous that it cannot reasonably be deemed sufficient to establish that any particular interpretation, consistent with the trial judge's ruling, is more probably correct. We hold, therefore, that there was insufficient evidence to support a finding by a preponderance of the evidence that defendant intended to adopt, agree with or approve the contents of his wife's accusatory statement. Accordingly, we hold that evidence of his wife's hearsay statement and defendant's nonverbal reaction thereto was not admissible under OEC 801(4)(b)(B).

## B. *Excited Utterance*

The state next argues that defendant's wife's accusatory statement is admissible as an excited utterance. OEC 803 provides:

> "The following are not excluded by [OEC 802, the hearsay rule,] even though the declarant is available as a witness:
>
> "* * * * *
>
> "(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Three requirements must be satisfied for a hearsay statement to qualify as an excited utterance: (1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition. Kirkpatrick, *supra,* at 533.

Excited utterances are received against a hearsay objection for the purpose of proving the truth of the matter stated, whether or not the declarant is available as a witness, on the rationale that the excitement caused by the startling event or condition temporarily stills the capacity for reflection and thus produces statements free of conscious fabrication. Legislative Commentary to Oregon Evidence Code at 154; McCormick, *supra,* at 855, § 297. *See also State v. Hutchison,* 222 Or 533, 537, 353 P2d 1047, 1049 (1960) (pre-Oregon Evidence Code case stating essentially same rationale). The Supreme Court of the United States recently expressed the rationale:

> "The basis for the 'excited utterance' exception * * * is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous."

*Idaho v. Wright,* 497 US ____, ____, 110 S Ct 3139, 3149, 111 L Ed 2d 638, 655 (1990).[13]

---

[13] See *supra* note 8 for a discussion as to the relevance of federal authorities in construing a rule of the Oregon Evidence Code.

■    As is true of statements of a party opponent, the admissibility of a hearsay statement under the excited utterance exception is to be resolved by the trial judge. Legislative Commentary to Oregon Evidence Code at 155; Kirkpatrick, *supra,* at 533; Louisell & Mueller, *supra,* at 517, § 439. The trial judge, in other words, must determine whether the proponent of the evidence has established that the three requirements to the excited utterance exception have been met. Kirkpatrick, *supra,* at 533. Once again the procedure is that which OEC 104(1) prescribes. *Id.*

In this case, as previously stated, the trial court admitted Lisa's accusatory hearsay statement, over defendant's inadmissible hearsay objection. The trial court did not, however, make findings on the preliminary questions of admissibility under OEC 104(1). We assume, therefore, that the trial judge concluded that the evidence, more likely than not, established the necessary predicate facts for admitting Lisa's hearsay statement as an excited utterance under OEC 803(2). That is to say, we assume that the trial judge concluded by a preponderance of the evidence that there was a startling event, that Lisa's statement was made while she was under the stress of excitement caused by the event, and that Lisa's statement related to the event.

The "startling event or condition" "is the catalyst that shocks the witness' senses, thereby rendering the witness' resulting statement sincere and trustworthy." Rice, Evidence: Common Law and Federal Rules of Evidence 517 (2d ed 1990). The "startling-event-or-condition" prerequisite has two components: the occurrence of an event or condition and its startling nature. Whether an event or condition is sufficiently startling cannot be determined from the nature of the event or condition itself. For the purposes of the excited utterance exception, an event or condition is not inherently startling. The startling-nature component is a relational concept, *i.e.,* whether an event is sufficiently startling to qualify cannot be determined without focusing on the event's effect on the declarant.

Often, the very nature of the event or condition (*e.g.,* a violent criminal assault or an automobile accident) will indicate its startling character. The sufficiency of those events or conditions to qualify as startling is, therefore,

seldom questioned. McCormick, *supra,* at 855. An event or condition that does not by its nature indicate a startling quality may, nevertheless, qualify. In determining whether a particular event or condition is startling, the standard is primarily subjective, *i.e.,* the trial judge should "look primarily to the effect [of the event or condition] upon the declarant." *Id.;* Louisell & Mueller, *supra,* at 495, § 439; Rice, *supra,* at 517; *United States v. Napier,* 518 F2d 316 (9th Cir), *cert den* 423 US 895, 96 S Ct 196, 46 L Ed 2d 128 (1975). According to Rice, *supra,* at 517:

> "The court * * * must focus on the effect of an event on the individual declarant. The fact that some individuals might not have been excited by the incident does not bar admission under the [excited utterance] exception. The contrary is also true. If the declarant was not excited by the event, it is irrelevant that most individuals would have been. Of course, the courts use events that are generally considered to be exciting as objective guideposts. Consequently, courts consider accidents and altercations to be exciting, and absent special circumstances or evidence to the contrary, will assume a declarant's reaction to them to be that of the average person."

The uniquely subjective nature of the determination of what constitutes a sufficiently startling event is vividly illustrated in *United States v. Napier, supra.* In *Napier,* about one week after returning home from seven weeks of hospitalization necessitated by an assault, the victim, on being shown a newspaper article, said, "[h]e killed me, he killed me." The *Napier* court held that "[t]he display of the photograph * * * qualifie[d] as a sufficiently 'startling' event" and admitted the victim's statement as an excited utterance under FRE 803(2), the federal counterpart to OEC 803(2). *Id.* at 318.

In the present case, evidence in the record supports a finding that defendant's statement to Lewis, that the marks on defendant's arms were not needle marks but were "injuries [that] he [had] received from working on a car[,]" was a falsehood. Although the expression of that falsehood does not by its nature indicate excitement, its apparent actual effect on Lisa, on the facts of this case, qualifies it as a sufficiently "startling event." Lisa, who was described by Lewis as "being tired," "fairly depressed," "distraught," "at wit's end," being occasionally tearful, and "coming down off of methamphetamine," was present during the conversation that

took place between defendant and Lewis and close enough to hear what was being said. According to Lewis, she did not seem to care whether Lewis found drugs in her home or arrested her. She did not react to or interrupt the conversation between defendant and Lewis until she heard defendant utter the falsehood. Upon hearing that falsehood, she immediately became "upset" and broke in by yelling her accusatory statement.

The spontaneity-of-the-utterance requirement, *i.e.,* the requirement that the statement of the declarant be "made while the declarant was under the stress caused by the event or condition," has both a *causal* and a *temporal* dimension. The declarant's excitement must have been caused by the startling event, and the declarant's statement must have been made while the excitement persisted. OEC 803(2). *See State v. Moen,* 309 Or 45, 59, 786 P2d 111 (1990) ("OEC 803(2) * * * creates an exception to the hearsay rule for statements by a person laboring under the stress of an event or condition which caused excitement").[14] Criteria that bear on the trial court's determination of the spontaneity of the utterance are "lapse of time, place, content of the utterance, physical or mental condition of the declarant, whether made in response to an inquiry, and presence or absence of a motive to fabricate." Cleary, Strong, Brown & Mosteller, *supra,* at 752. *See* Graham, *supra,* at 839, § 803.2 (stating essentially the same criteria).

As we observed in our discussion of the "startling event" prerequisite, there is ample evidence in the record to support a finding that Lisa's excitement was caused by the startling event (defendant's expression of the falsehood) and that Lisa's accusatory statement was made while that excitement persisted. Her accusatory statement was a contemporaneous, unsolicited, spontaneous reaction, rather than the result of reflective thought. Arguably, Lisa was motivated to deflect suspicion from herself to defendant. Testimony that Lisa did not care whether the officer found drugs in her home

---

[14] *See also Zeller v. Dahl,* 262 Or 515, 519, 499 P2d 1316 (1972) (a pre-Oregon Evidence Code case cited with approval in the Legislative Commentary to Oregon Evidence Code, 155 (1981), holding that the statement of the declarant must be a " 'spontaneous reaction to the occurrence or event,' rather than 'the result of reflective thought' ").

or arrested her justify a rejection of that inference, however. Evidence in the record, therefore, supports a finding that Lisa's statement was made while she was under the stress of excitement caused by the startling event.

Finally, Lisa's statement related to the startling event. The admissibility of Lisa's statement as an excited utterance under OEC 803(2) is not defeated because it contains a conclusion or opinion, *State v. Moen, supra,* 309 Or at 61; Graham, *supra,* at 839, or accuses defendant of committing a crime. Graham, *supra; State v. Hutchison, supra,* 222 Or at 533.

Evidence in the record supports the conclusion, therefore, that, more likely than not, Lisa's accusatory statement was made while she was under the stress of excitement caused by the event and that Lisa's statement related to the event. The trial court did not, therefore, err in permitting Lewis to testify, over defendant's inadmissible hearsay objection, about Lisa's statement.

■ In stating his objection to the trial court, defendant did not segregate inadmissible portions of Lewis' testimony about defendant's nonverbal reaction from Lisa's accusatory statement. An objection to evidence as a whole is insufficient as a basis for reversal on appeal when any part of the evidence objected to is admissible. *State v. Brown,* 310 Or 347, 358-59, 800 P2d 259 (1990); *State v. Madison,* 290 Or 573, 580, 624 P2d 599 (1981).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**GRABER, J.,** concurring.

I agree with the result that the majority reaches and with its reasoning except on one point. I write separately to disavow a part of the opinion that addresses the question whether the foundation for evidence offered under OEC 801(4)(b)(B) falls under OEC 104(1) or OEC 104(2).

To support the holding that the intent to adopt or agree with another's statement is a preliminary question of fact under OEC 104(1), the majority offers four reasons. First, the wording of the rule suggests that result, because the party's intent is a preliminary question concerning "the

admissibility of evidence," which generally belongs in the trial judge's province. Second, the Legislative Commentary broadly interprets the scope of OEC 104(1) and includes analogous illustrations. Third, OEC 104(2) relates to the relevance, as distinct from the competence or admissibility, of evidence. 311 Or at 211. Although the intent to adopt or agree with another's statement is what makes an adoptive admission relevant, it also can properly be classified as a preliminary requirement for admissibility.

In my view, those reasons suffice. I cannot concur, however, in the majority's fourth explanation: that the capacity for mischief of a hearsay statement is so great "that judicial intervention is required to prevent improper use of evidence." 311 Or at 213.

The majority's discussion of the policy reasons for its result suggests a distrust for juries, which I do not share. The danger that a jury may misuse evidence that turns out to be inadmissible, or that is admissible for a limited purpose, exists in many trials and in many contexts. Ordinarily, we expect the trial court to give appropriate limiting or cautionary instructions,[1] and we also presume that jurors follow those instructions.[2] There is no reason to suppose that jurors are less capable of following proper instructions, if needed in a particular case, when the question is one of conditional relevance under OEC 104(2), than of following other evidentiary instructions.

As the majority acknowledges, adoptive admissions need not be "admissions" or against the party's interest,[3] so there is nothing inherently more damaging about these statements than about other conditionally relevant evidence that jurors might hear. What is different about adoptive admissions is that, in the absence of the intent to adopt or agree with them, the statements are hearsay. The majority believes, then, that jurors cannot be expected to sort the wheat from the chaff themselves or to follow instructions that might be given on conditional relevance, when the conditionally relevant evidence is a hearsay statement. That belief

---

[1] *See, e.g.,* OEC 105 (limiting instructions).

[2] *State v. Smith,* 310 Or 1, 26, 791 P2d 836 (1990).

[3] 311 Or at 205 n 4.

overlooks, not only the common sense of jurors, but also the common place that hearsay has in everyday life. Whatever may be the reasons for the hearsay rule, historically and today, they are not enough to justify the selection of OEC 104(1) for foundation questions under OEC 801(4)(b)(B).

Gillette, J., joins in this concurring opinion.