No. 801          November 6, 2024          97

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEREK JOHN FRANZEN,
*Defendant-Appellant.*

Deschutes County Circuit Court
20CR28569; A179028

Alison M. Emerson, Judge.

Submitted February 7, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Carla E. Edmondson, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Kistler, Senior Judge.*

KISTLER, S. J.

Affirmed.

_____
* Kistler, S. J., *vice* Jacquot, J.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for harassment. He argues that the trial court erred in admitting a cell phone video and in denying his request for a less-satisfactory-evidence instruction. We affirm.

This case arises from a confrontation between two people outside a café in La Pine. One person, Benjamin, had been volunteering at a charity event being held at the café. The owner of the café had a disagreement with Benjamin and asked him to leave. Benjamin was sitting in his car in the parking lot next to the café when defendant approached the passenger side of the car. According to Benjamin, defendant began banging on the side window and the hood of his car. Benjamin testified that he stepped out of his car, the two men confronted each other at the back of the car, and defendant hit Benjamin and pushed him down.

Defendant told a different story to the investigating officer.[1] He told the officer that he had never touched Benjamin. Two eyewitnesses testified. One testified that defendant hit and pushed Benjamin down. The other, who was romantically involved with defendant, testified that defendant had merely tapped on Benjamin's car and had neither hit nor shoved Benjamin, although she admitted that defendant might have swung and missed before Benjamin fell.

At trial, the state introduced a video of the confrontation, which a security camera at an adjacent cardlock fueling station had captured. Although the security camera was focused on an off-road diesel pump, it recorded the events in the café parking lot next door. The video introduced at trial was a police officer's cell phone recording of the original surveillance video. It shows defendant approaching the passenger side of Benjamin's car. It shows Benjamin getting out of his car and squaring off with defendant at the rear of his car. Benjamin then turns away and walks back towards the driver's side of his car. Defendant follows Benjamin, who turns and pushes defendant away, causing

---

[1] Defendant did not testify at trial. The officer repeated defendant's statements to the jury when he testified.

defendant to step backwards. Defendant recovers and comes after Benjamin. When defendant catches up with Benjamin, defendant takes a swing at Benjamin, who falls backwards. Because Benjamin was standing between the camera and defendant, the video does not clearly show whether defendant hit Benjamin or whether he swung and missed.

The jury convicted defendant of harassment but acquitted him of fourth-degree assault.[2] On appeal, defendant assigns error to two rulings. His first assignment of error is directed at a pretrial ruling admitting the cell phone video. He argues that the cell phone video was not an accurate copy of the original surveillance video and thus was not an admissible duplicate. His second assignment of error is directed at the trial court's ruling denying his request for a less-satisfactory-evidence instruction.

We begin with the first assignment of error and take the facts from the pretrial hearing on defendant's motion *in limine* to exclude the cell phone video. The officer investigating the confrontation between defendant and Benjamin spoke with O'Kane, who managed the surveillance system for the cardlock fueling station. The officer asked O'Kane whether the station's surveillance video had captured a confrontation a couple of days earlier. O'Kane found the relevant part of the surveillance video and showed it to the officer, who asked if O'Kane could make a digital copy of the surveillance video. O'Kane did not know how to do that, and the people who might know were out of town.[3] The officer accordingly used his cell phone to make a digital copy of what he perceived was the relevant portion of the surveillance video—the portion that captured the confrontation. He later emailed the cell phone video to his office where he burned a CD of that video.

At the pretrial hearing, defendant did not dispute that the cell phone video would be admissible if it were an

_____

[2] Interpreting the video consistently with the jury's verdict, we note that the jury could have found that defendant swung at Benjamin and missed.

[3] At the pretrial hearing, the state explained, and defendant did not dispute, that the surveillance video would have been recorded over, as part of the security system's regular operation, if the officer had not found a way to record it himself. The state later offered evidence at trial to establish that fact.

accurate copy of the original surveillance video.[4] *See* OEC 1003 (providing that a duplicate of an original document is admissible). He argued, however, that it was not an accurate copy for two reasons. Defendant noted initially that the officer's reflection is visible on the cell phone video. The state did not dispute that the officer's reflection can be seen on the cell phone video and that it was not part of the original surveillance video.[5] However, the officer testified that he did not notice his reflection when he recently viewed the cell phone video, and he agreed that, although his reflection is visible on the cell phone video, his reflection did not "detract, in any material way, from what the original video showed."

The trial court did not find defendant's first objection persuasive. Rather, the court found that the cell phone video was a true and accurate copy of the original surveillance video. The trial court reasonably could have found, based on the witnesses' testimony at the pretrial hearing and its observation of the cell phone video, that the outline or shadow of the officer's image is visible on the cell phone video but that, as the officer testified, his reflection did not detract in any material way from what the original surveillance video showed.

Defendant raised a second, more substantial objection. His lawyer asked both O'Kane and the officer if, in viewing the original surveillance video, they "recall[ed] at about 25 seconds in that video there being a cut or splice in that video." O'Kane did not recall seeing any cuts or splices in the original; neither did the officer. The officer noted, however, that, in reviewing the cell phone video, "I see a—a part where it appears to jump a little bit. I don't—I don't remember noticing that at the time."

In ruling on defendant's second objection, the trial court observed that "as to the issues of this potential splice, my recollection of the testimony is that it appears that there might be a jump, not that there necessarily was a splice, but that [the officer] did state that he took the video as the

_____

[4] Defendant did not dispute that the CD was an accurate copy of the cell phone video. We accordingly refer to the cell phone video, which is the focus of defendant's argument, rather than the CD.

[5] Presumably, the monitor displaying the original surveillance video reflected the officer's image as he recorded the surveillance video.

[original surveillance] video was playing." The court found that there is "no evidence to show that there is actually a change in the video, only that there might be something that they view as a jump in the video."

As we understand the court's ruling, the court concluded that any jump in the cell phone video was present in the original surveillance video. Defendant argues, however, that the trial court should have inferred from the fact that neither O'Kane nor the officer remembered a jump in the original surveillance video that the jump in the cell phone video was not present in the original. The court could have drawn that inference; however, it was not required to do so. Both O'Kane and the officer viewed the original surveillance video approximately two years before the pretrial hearing. The court reasonably could have found that the "jump" was not memorable and that the fact that neither O'Kane nor the officer remembered it did not mean that the jump was not present on the original surveillance video.[6] That is particularly true given the officer's testimony that he took the cell phone video as accurately as he could to capture the images on the surveillance video and O'Kane's testimony that the cell phone video was a fair and accurate copy of the original.[7] Given the trial court's findings, defendant's arguments that the cell phone video was not an accurate copy of the original surveillance video fail. *Cf. State v. Carlson*, 311 Or 201, 217-19, 808 P2d 1002 (1991) (upholding a trial court's evidentiary ruling because there was evidence in the OEC 104(1) hearing from which the trial court reasonably could have made the factual findings that were a predicate for its evidentiary ruling).

---

[6] The court reasonably could find that the jump is brief. It appears in the video after Benjamin pushed defendant away and began to walk back to the driver's side of his car. Between the time that defendant recovered from being pushed back and the time that he began to come quickly towards Benjamin, the jump in the video appears.

[7] In ruling on defendant's motion, the trial court referred to O'Kane's and the officer's testimony that the cell phone video was a true and accurate copy of the original. Although O'Kane testified that the cell phone video was a fair and accurate copy of the original video, the officer did not explicitly say that. The trial court, however, reasonably could have inferred from the officer's testimony that he viewed the cell phone video as a true and accurate copy of the original. Moreover, as the state notes, the officer testified at trial that the cell phone video was a fair and accurate copy of the original before defendant renewed his objection to the video's admission, which the court overruled.

Defendant's second assignment of error is directed at the trial court's ruling denying defendant's request for a less-satisfactory-evidence instruction. *See* ORS 10.095(7) and (8). Those subsections provide that the jury is to be instructed on all appropriate occasions:

"(7) That evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict; and therefore,

"(8) That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory [evidence] was within the power of the party, the evidence offered should be viewed with distrust."

ORS 10.095(7) and (8); *see State v. McDonnell*, 313 Or 478, 497-503, 837 P2d 941 (1992) (interpreting those subsections).

At trial, defense counsel identified a laundry list of reasons why, in his view, a less-satisfactory-evidence instruction was appropriate. Those reasons ranged from the state's failure to call other witnesses to its failure to show the jury the original surveillance video from the time that Benjamin first arrived at the café until the time that he drove out of the parking lot. Defendant told the trial court that the entire surveillance video would have shown whether Benjamin arrived at the café at 10:45 a.m., as Benjamin testified, or at noon, as a defense witness testified. Moreover, defendant explained that the entire surveillance video would have shown whether Benjamin made a derogatory remark about defendant as he drove out of the parking lot, as a defense witness testified and as Benjamin denied. Notably, defendant did not rely on the jump on the cell phone video as a basis for giving a less-satisfactory-evidence instruction.[8]

Although defendant offered multiple reasons at trial why the instruction should be given, the pertinent portion of the record that he sets out on appeal in support of his assignment of error identifies only two respects in which the state's trial evidence was less satisfactory than other evidence it could have offered. Both relate to the cell phone video. First,

---

[8] Indeed, no evidence was offered at trial (as opposed to the pretrial hearing) from which the jury could have inferred that the cell phone video did not accurately capture the portion of the original surveillance video that the officer recorded.

defendant told the trial court that, in recording the original surveillance video, the officer zoomed in on the portion of the monitor showing the confrontation rather than recording the whole monitor. He argued that, if the officer had recorded the whole monitor, the resulting recording could have revealed witnesses or other relevant evidence. Second, the officer recorded the portion of the original surveillance video that showed the confrontation between defendant and Benjamin. He did not, however, continue recording the surveillance video and failed to record whether Benjamin made a disparaging remark about defendant as Benjamin drove away from the parking lot.

Neither omission that defendant has identified on appeal provides a basis for reversing the trial court's ruling. The first omission that defendant identifies fails for two reasons. There was no evidence at trial that the officer zoomed in when he recorded the original surveillance video. To be sure, there was evidence at the pretrial hearing that he zoomed in on the confrontation rather than recording the whole monitor displaying the original surveillance video. But that evidence was not before the jury, which had no basis for inferring that cell phone video was less satisfactory in that respect than the original surveillance video.

Beyond that, defendant offered no evidence from which the jury reasonably could have found that the original video would have contained any relevant evidence that the cell phone video did not. The Supreme Court has explained that a party requesting a less-satisfactory-evidence instruction must show that the jury reasonably could conclude that the evidence that was not offered would have been "stronger and more satisfactory than the evidence [that was] offered." *McDonnell*, 313 Or at 500. Defendant did not meet that minimum criterion. He merely speculated that, if the officer had recorded the entire monitor, as opposed to zooming in on the confrontation, the resulting recording might have revealed something that could have been helpful.

The second omission noted in defendant's brief does not advance his argument. As defendant correctly notes, the café owner testified at trial that, as Benjamin "left the parking lot," he "said we [(the café owner and defendant)]

were going to get ours, and he pointed at [defendant] and said, 'You're going to jail,' and laughed while he was driving." Defendant reasoned that, if the state had offered the original surveillance video (or if the deputy had recorded more of the original video), the jury would have been able to determine whether the café owner's testimony was accurate or whether, as Benjamin said, he had not made those remarks.

The initial difficulty with defendant's argument is that the original surveillance video had no audio.[9] It would not have revealed what Benjamin did or did not say. Moreover, the fueling station's security camera was focused on a fixed point and captured the portion of the parking lot where Benjamin's car was parked. There is nothing in the record from which the jury reasonably could have found that the camera would have captured footage of Benjamin's car as it "left the parking lot" and as "he was driving" away. For all that appears from the record, the jury could not even have determined if Benjamin rolled down his window and moved his lips. In short, the record lacks evidence from which the jury could have inferred that either the original surveillance video or a longer cell phone recording of the original video would have confirmed which witness's testimony was accurate.

As before, the jury could not reasonably have found that the cell phone video was less satisfactory than the original video in the two respects that defendant noted below and renews on appeal. In his brief, defendant has mounted an ambitious argument that the text and context of ORS 10.095(7) and (8) are so clear that we should overrule many of our past cases (and perhaps parts of the Supreme Court's decision in *McDonnell*) explaining when a less-satisfactory-evidence instruction is appropriate. However, given the two specific omissions that defendant noted below and has renewed on appeal, we need not reach the broader statutory arguments that he now pursues.

Affirmed.

---

[9] The officer testified at trial to that fact, which no one disputed.