STATE of Wisconsin, Plaintiff-Appellant,

v.

Donny ROGERS, Defendant-Respondent.

Court of Appeals

*No. 94–1912–CR. Submitted on briefs July 28, 1995.—Decided September 13, 1995.*

(Also reported in 539 N.W.2d 897.)

818

820

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Brian K. Holmgren*, assistant district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Paul G. Bonneson* of Wauwatosa.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. At Donny Rogers's upcoming trial for murder, the State of Wisconsin wants to introduce an inculpatory statement made by his codefendant, Thomas Myers. However, Rogers raised a hearsay objection before the trial court. In response, the State principally argued that Rogers adopted Myers's statement. The trial court reviewed the circumstances surrounding the alleged adoption and sustained Rogers's objection. The State then sought this interlocutory appeal. We affirm.

The body of Daette Berndt was found on May 24, 1987, floating in a retention pond in southern Kenosha County. A subsequent autopsy revealed that she had died as a result of drowning and had received three blows to her head with a blunt object shortly before death. She was sixteen years old.

On May 30, 1987, Kenosha sheriff's department detectives interviewed Myers and Rogers. At the time, Myers indicated that he had met Berndt on Friday, May 22 at a party in Fox Lake, Illinois, and then later brought her to another party at Rogers's apartment in

Zion, Illinois. While at this party, Berndt was accused of stealing marijuana from another guest and was asked to leave. Myers told the detectives he was too drunk to drive her home and that once she left the party he did not see her again. When interviewed, Rogers only indicated that he saw the victim at the party at his apartment. Myers was interviewed again on June 5 and 12, 1987. The interviews revealed nothing different. These investigative efforts did not lead to any arrests.

The case remained open, but effectively dormant until the summer of 1993, when the Lake County Major Crimes Task Force and the Kenosha sheriff's department together renewed the investigation. On June 1, 1993, Rogers and Myers were both reinterviewed. At first, each tried to implicate a third party, Brad Nix, as Berndt's killer. Myers and Rogers each attributed statements to Nix suggesting that Nix had admitted leaving the party with Berndt and that he later killed her. Both claimed that Rogers's older brother, David Rogers, was present when Nix made these statements. However, when Rogers and Myers were brought into the interview room with David and repeated their stories in front of him, David could not recall Nix making such statements.

Myers was interviewed again on June 2, 1993, and this time gave a statement to the detectives from the Lake County Major Crimes Task Force. In that statement, Myers explained that he, David Rogers, Nix, Berndt and a Nick Fisch had all driven in Nix's Blazer to Kenosha for breakfast. Myers claimed he saw Nix pull Berndt out of the Blazer and hit her in the back after she refused his sexual advances. Myers indicated that Nix left the victim on the side of the road, saying she could "find her own way home."

On the morning of June 3, 1993, Myers and Rogers were both brought to the Lake County sheriff's station house for further questioning. Myers was confronted with his various conflicting versions, the fact that Nix did not own a Blazer as claimed and his admission that he was present at the crime scene. At this point, Myers again provided a different version of what occurred. This time he implicated himself and Rogers in the death of the victim. He stated that only he and Rogers went with Berndt in his car to Kenosha for breakfast. Then on the way back to Zion, they parked on a quiet country road next to a big pond and they each tried to have sex with Berndt. After she rejected their advances, Myers claimed that Rogers hit the victim three times in the head with a tire iron, knocking her out, and then rolled her down the hill into the water to wake her up.

After Myers provided this statement, a detective confronted Rogers with the facts of Myers's confession and later testified that Rogers remained silent in the face of these accusations. The detective also played a portion of Myers's tape recorded statement before Rogers and testified that Rogers refused to admit his involvement in the death, stating that Myers already had lied about the case.

The police subsequently brought Myers into the interview room where Rogers was located and asked him to restate his story about Berndt's death. The detective testified that Rogers for the most part remained silent during Myers's testimonial. However, at several points, Rogers denied Myers's allegations and accused Myers of lying.

Myers's statement was then used as support for a joint criminal complaint against Myers and Rogers. Both were arrested and extradited to Kenosha County.

They had their initial appearance on September 2, 1993. Subsequently, in a separate trial, Myers was convicted as a party to the crimes of second-degree murder and intermediate aggravated battery with a weapon. Myers was acquitted of kidnapping and attempted first-degree sexual assault. This appeal only addresses the State's case against Rogers.

In addition to the above information gathered from these police interviews, the State also wants to present at Rogers's trial, testimony from Steven Martin, his fellow inmate at the Kenosha County jail. In an April 26, 1994, written statement, Martin indicated that back in September 1993, Rogers made various statements to him concerning his involvement in Berndt's death. Martin also indicated Rogers had pointed out Myers in the jail and that Rogers told Martin that he wanted to kill Myers because Myers had "snitched him out."

In a preliminary hearing on evidentiary issues, the trial court sustained Rogers's hearsay objection to the introduction of Myers's June 3 statement.[1] In this interlocutory appeal, the State challenges this ruling. It presents three arguments.[2] First, it argues that

---

[1] There was substantial dispute over the effect of the trial court's ruling. Although Rogers had filed a motion to suppress all of Myers's statements to the police, the trial court specifically noted that it was only ruling on his hearsay objection. Although these are normally reserved for trial, here it was raised during a pretrial deposition to determine whether Myers was an available witness. *See* § 967.04(1), STATS. Therefore, as the trial court correctly noted, Myers's statements technically are not suppressed and the State may still use them at trial if it provides a means of circumventing Rogers's hearsay objection.

[2] In its pretrial briefs and oral arguments, the State pressed other substantive arguments against Rogers's hearsay objec-

these codefendants' early efforts to shift the blame to Nix required each to adopt the other's version of the events, thereby establishing a "pattern of adopted admissions." The State argues that it should therefore be allowed to present all of Myers's statements to the police because Rogers previously agreed to stick to this version of their story. Next, the State claims that Rogers adopted Myers's June 3 statement during his police interrogation since when personally faced with the accusations that he was involved in Berndt's murder, Rogers did not truthfully and sincerely deny them. *See, e.g., McCormick v. State,* 181 Wis. 261, 270-72, 194 N.W. 347, 350-51 (1923) (describing admissions by silence). Third, the State alleges that Rogers's statements to a fellow inmate, in which he stated that Myers "snitched him out," separately demonstrate his adoption of the June 3 statement. Finally, even if each factual scenario does not support admission, the State submits that all of the facts must be viewed together, and thus are enough to overcome the hearsay objection.

Before turning to the merits of the State's arguments, however, we must address Rogers's suggestion that the State has waived its right to raise two of its

---

tion. The State first argued that the June 3 statement was a declaration against interest. *See* § 908.045(4), STATS. The prosecutor also argued that Myers's statement was not being offered to prove facts, but rather to show only that Rogers and Myers conspired to hide their involvement in Berndt's murder. Although the trial court dismissed these arguments, the State has not sought review, acknowledging that the Supreme Court's recent decision in *Williamson v. United States,* 512 U.S. —, 114 S. Ct. 2431 (1994), forecloses any possible argument. *See id.* at —, 114 S. Ct. at 2436-37 (suggesting that the declaration against interest hearsay exception should be narrowly construed).

three specific challenges because they were not all addressed at the trial level. In *State v. Holt,* 128 Wis. 2d 110, 125, 382 N.W.2d 679, 687 (Ct. App. 1985), we held that a party seeking reversal may not advance arguments on appeal which were not presented to the trial court. Although we recognized that the rule would seemingly disadvantage criminal defendants, since they are most likely to challenge the trial court, we nonetheless cautioned that "[w]e will without hesitation apply the waiver rule against the state where the issue was not first raised by it at the trial court." *Id.* This is such a case.

Our conclusion rests on the analysis of the various arguments which the State put to the trial court. The State first raised its adoptive admission theory during a hearing on May 20, 1994. There, the trial court ruled that Rogers, through statements he made to Martin, did not adopt Myers's June 3 statement. The State later filed a motion for reconsideration of rulings on this and other related evidentiary issues. Subsequently, during the June 24 hearing, the State offered the following summary of its position on the admissibility of Myers's statement:

> So, that is essentially the theory of the case. One, [Myers's statements are] not hearsay because they're not offered for the truth of the matter asserted, but they show, in fact, Tom Myers repeatedly lied; second, they are statements in furtherance of a conspiracy, i.e., to cover up their own involvement in the death; and, third, they are statements which are adopted by Donny Rogers to the extent that there are other portions of the statements that deal directly with matters that are being offered for the truth of the matter asserted, and

specifically those involved the events that took place at the party.

The State now contends that it raised the general issue of adoptive admissions as its third reason for admitting Myers's statement, and this should suffice for purposes of defeating the *Holt* waiver rule. Prior to this colloquy, however, the only theory advanced by the State in its trial briefs and during oral arguments was that Rogers adopted Myers's statement during his conversations with Martin. We observe that although the State now attempts to assert a conspiracy to adopt each other's admissions, this theory is completely unrelated to its earlier argument that a conspiracy to commit the crime acted as an exception to the hearsay rule. We cannot allow the State to advance its two new theories in this interlocutory appeal.

The *Holt* rule is based on a policy of judicial efficiency. *See id.* at 124, 382 N.W.2d at 686-87. By forcing parties to make all of their arguments to the trial court, it prevents the extra trials and hearings which would result if parties were only required to raise a general issue at the trial level with the knowledge that the details could always be relitigated on appeal (or on remand) should their original idea not win favor. *See id.* at 124, 382 N.W.2d at 686. We will not, however, blindside trial courts with reversals based on theories which did not originate in their forum.

Thus, after a thorough review of the record, we are satisfied that the State here raises for the first time its arguments that: (1) Rogers and Myers were engaged in a conspiracy to hide their involvement in Berndt's death which established a "pattern of adopted admis-

sions,"[3] and (2) Rogers manifested his assent to Myers's June 3 statement when the police confronted him during questioning.[4] Although the State did signal its general interest in using the adoptive admission

[3] Our application of *State v. Holt*, 128 Wis. 2d 110, 382 N.W.2d 679 (Ct. App. 1985), is not a signal that there possibly may be merit to this argument. We have sincere doubts about the State's reasoning. It seems to argue that Rogers and Myers conspired to keep to a single story and thus all of their later statements should be charged to the other, regardless of the content of the statement. However, even if there was such an agreement, when Myers gave a statement implicating himself and Rogers in Berndt's death, their conspiracy to hide their involvement ended. *See United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984) ("a conspiracy terminates when its central criminal purposes have been attained"); *see also State v. Jennaro*, 76 Wis. 2d 499, 506, 251 N.W.2d 800, 803 (1977). Rogers simply would not have agreed in advance to a statement which implicated him in the crime.

[4] We similarly have reservations about this argument. As the State alleges, Rogers's silence and some of his statements made during his confrontation with Myers, viewed in isolation, could possibly be construed as manifesting his adoption of Myers's statement. However, the standard requires that all of the defendant's actions and statements be taken in context. *See State v. Marshall*, 113 Wis. 2d 643, 659, 335 N.W.2d 612, 619 (1983) (Abrahamson, J., concurring). Based on the following exchange between Myers, Rogers and the district attorney, we fail to see how a jury could reasonably conclude that Rogers adopted what Myers had just told the police.

| | |
|---|---|
| [District Attorney] | Ah, so as I was just explaining to Donnie, we've got kind of a conflict here . . .. |
| [Myers] | Right. |
| [District Attorney] | as to what occurred. |
| [Myers] | Right. You were there Donnie, you were with me. |
| [Rogers] | You're full of shit. |

rule, *Holt* requires that the appellant articulate each of its theories to the trial court to preserve its right to appeal.

We finally turn to the merits of the only issue which the State properly presents for appeal.[5] Here, the State argues that the trial court erred when it concluded that Rogers, through his discussions with Martin, did not adopt the statement made by Myers during police interrogation on June 3, 1993.

The scope of our review is limited to whether the court misused its discretionary power over the admission or exclusion of evidence. *See State v. Patino,* 177 Wis. 2d 348, 362, 502 N.W.2d 601, 606 (Ct. App. 1993). We examine the record to determine if it supports a conclusion based on a logical interpretation of the facts and proper legal standards. *Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 55-56, 252 N.W.2d 81, 84 (1977).

The State highlights the following facts to support its theory. First, during his conversations with Martin, Rogers described in relative detail the substance of Myers's June 3 statement. Further, when Rogers spoke with Martin, he had been in custody for three and one-half months; he had time to reflect on his predicament. Thus, when Rogers told Martin that he wanted to "kill [Myers]" because Myers "snitched him out," Rogers

| [Myers] | No I'm not. We tried to get a piece of ass of this girl. |
| [Rogers] | Man you're hallucinating man. |

[5] Since we have concluded that two of the State's three arguments are not reviewable, we find it unnecessary to consider whether the facts supporting each together provide enough foundation for admitting Myers's statement.

was demonstrating that he believed Myers's statement was truthful.

We see that Rogers's hearsay objection was correctly raised to the extent that Myers's extra-judicial statement is being offered to prove the substance of the State's case that Rogers struck Berndt with a tire iron. *See* § 908.01(3), STATS. The State, however, asserts that § 908.01(4) applies, and thus, Myers's statements are, by definition, not hearsay; the relevant portion of this rule provides:

STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

. . . .
 (b) *Admission by party opponent.* The statement is offered against a party and is:

. . . .
 2. A statement of which the party has manifested the party's adoption or belief in its truth . . ..

When faced with such evidence, the trial court's role is to first establish that there is a proper foundation. There must be sufficient facts which would enable a jury reasonably to conclude that the accused intended to adopt the declarant's statements. *United States v. Monks,* 774 F.2d 945, 950 (9th Cir. 1985);[6] *see State v. Marshall,* 113 Wis. 2d 643, 660-61, 335 N.W.2d 612, 620 (1983) (Abrahamson, J., concurring).

While the facts supporting the State's theory are undisputed, Rogers and the State disagree about their

---

[6] Wisconsin's adoptive admission rule duplicates the federal rule. *Compare* § 908.01(4)(b), STATS., *with* FED. R. EVID. 801 (d)(2)(B). Federal court decisions interpreting counterpart rules of evidence are persuasive authority. *See State v. Blalock,* 150 Wis. 2d 688, 702, 442 N.W.2d 514, 519-20 (Ct. App. 1989).

legal significance. Thus, to overcome Rogers's objection, the State must show that the trial court misapplied the law of adoptive admissions when it found that the record could not support a conclusion that Rogers had "manifested" his "adoption or belief" in the truth of Myers's statement.

We first focus on the trial court's reasoning. After reviewing the facts and relevant legal authority, the trial court found that the State had not met the required standard for admitting Myers's statement as an adoptive admission. We see the court's analysis summarized in the following passage:

> Here, the district attorney has produced no evidence that the defendant, in his alleged admissions to Mr. Martin, had reference to all or any of the Myers statement of June 3 which the state seeks to introduce. Merely because the statement which Mr. Martin claims the defendant made to him agrees in many particulars with the offered Myers statement, even where accompanied by the allegation that he threatened Myers for "snitching" on him, does not mean that the defendant is held charged not only with his own statements, but with those of Myers as well. There must be an unambiguous and knowing approval or adoption of the offered statement.[7]

We see from this discussion that the trial court tried to ascertain Rogers's intent when he made the alleged

---

[7] We add that the following analysis offered by the trial court during oral arguments is equally illustrative:

I would agree with [the State] if Martin had held up the statement of Thomas Myers and said, well, look at what this guy said and then he adopts it by saying, yeah, it's all true. That's another issue. But . . . just because they happened to be similar or the same is not . . ..

statement. We agree with the trial court's methodology and hold that it applied the proper legal test.

The State seems to argue, nonetheless, that the trial court applied too strict a standard. It cites *United States v. Rollins,* 862 F.2d 1282, 1296 (7th Cir. 1988), *cert. denied sub nom. Slaughter v. United States*, 490 U.S. 1074 (1989), and states: "all that is required is *acquiescence* on the part of Rogers in [Myers's] previous statements, and conduct which evidences his belief in the truth of those statements." (Emphasis added.)

However, deeper scrutiny of this case reveals that under the State's theory of how Rogers adopted the statement, he must have done more than "acquiesce" to Myers's statement.[8] In *Rollins*, the defendant claimed that the district court erred when it found that statements made by a government informant, Eddie Wells, were his adopted admissions. *See id.* at 1285-86, 1296. While the court of appeals acknowledged that the defendant "never specifically said 'I adopt Wells' statements as my own,' " it recognized that the defendant had participated in the "give and take" of a telephone conversation and carried out a plan for a drug deal made during the phone call. *Id.* at 1296-97. We thus see that a key to analyzing the State's theory is whether

---

[8] To "acquiesce" means to "accept or comply tacitly or passively." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY. 18 (1976). The State, however, is not arguing that Rogers adopted Myers's statement by remaining silent in the face of harsh accusations. *See McCormick v. State,* 181 Wis. 261, 271, 194 N.W. 347, 350 (1923) ("The circumstances must be such as would naturally call for some action or reply on the question of guilt."). Thus, the State's reliance on *United States v. Rollins,* 862 F.2d 1282, 1296 (7th Cir. 1988), *cert. denied sub nom. Slaughter v. United States*, 490 U.S. 1074 (1989), is improper given its theory of how the statements were adopted.

832

Rogers's conduct or statements may be viewed as a purposeful acknowledgement of Myers's earlier statement.

As Rogers argues in his briefs to this court, the scenario presented by the State, at best, demonstrates that Rogers made *references* to Myers's statement while in custody. Indeed, he cites *State v. Severson*, 696 P.2d 521 (Or. 1985), for the rule that the circumstances must "manifest an 'adoptive' rather than merely a 'referential' connotation." *Id.* at 525-26 (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1244 (E.D. Pa. 1980), *rev'd in part on other grounds*, 723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds*, 475 U.S. 574 (1986)).

The issue in *Severson* was whether the defendant competently could have waived her *Miranda* rights. In support of a motion to exclude the state's expert, the defendant excerpted a portion of his report. *Id.* at 522-23. When the state offered this same report at a later hearing, the court overruled the defendant's hearsay objection, reasoning that she had adopted the report when she filed her motion. *Id.* at 523. The Oregon Supreme Court reversed the trial court's finding that there was no evidence that the defendant had "embraced the truth" of the report. *Id.* at 526. It recognized that the defendant had only included these portions of the state expert's report to challenge its reliability. *Id.*

We find the *Severson* court's reasoning persuasive.[9] While Rogers may have been *referring* to Myers's June 3 statement, and possibly recognized that Myers's

[9] Although the *Severson* court specifically was addressing adoptive admissions in the context of court filings, the court couched its analysis on the Oregon rule of evidence for adoptive

833

confession hurt his case, these circumstances do not support a reasonable conclusion that Rogers intended to specifically adopt this statement as his own.[10] Over three months elapsed between Myers's statement and Rogers's complaint that he was "snitched out." Moreover, we do not place much significance on Rogers's reiteration of the facts revealed in Myers's statement, as the police previously had confronted him with these facts. In addition, Rogers's anger with Myers does not necessarily indicate that what Myers told the police is true. If Myers had *falsely* implicated Rogers, he would also want revenge. Finally, we cannot assign too much weight to Rogers's choice of the word "snitch." The theory that Rogers purposefully chose the word "snitch" because it indicates his belief in the truthfulness, or adoption, of Myers's earlier statement to the police is simply too speculative.

We conclude that there must be facts that support a reasonable conclusion that a defendant purposefully has "embraced the truth" of someone else's statement as a condition precedent to finding an adoptive admission. The trial court did not erroneously exercise its discretion in applying the law and determining a lack of such evidence.

---

admissions, which traces the federal rule. *See State v. Severson,* 696 P.2d 521, 524-26 (Or. 1985).

[10] The State also cites *United States v. Faymore,* 736 F.2d 328 (6th Cir.), *cert. denied,* 469 U.S. 868 (1984). There, the defendant was found to have adopted statements made by his agent because he made references to a code name issued by the agent. *See id.* at 331, 335. While at first glance this case seems to support the State's position, we note that the defendant in *Faymore* made the reference in order to further his illegal drug operation. *See id.* at 331.

*By the Court.*—Order affirmed.