**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP1841-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.  1994ME28D

**IN COURT OF APPEALS**
**DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF L. E.:

PORTAGE COUNTY,

    PETITIONER-RESPONDENT,

  V.

L. E.,

    RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Portage County: THOMAS B. EAGON, Judge.  *Affirmed*.

¶1     FITZPATRICK, P.J.[1] L.E. appeals an order from the Portage County Circuit Court extending her involuntary commitment as requested by Portage County pursuant to WIS. STAT. ch. 51.  L.E. contends that there was insufficient evidence to support the circuit court's order extending her commitment.  I affirm the court's order.

## BACKGROUND

¶2     It appears that L.E. has been subject to an involuntary commitment for approximately twenty-five years.  In December 2018, the County filed an Evaluation, Recommendation, and Petition for recommitment seeking to extend L.E.'s involuntary commitment for an additional twelve months.

¶3     The County's request for recommitment was tried to the circuit court.  At the end of the evidentiary hearing, the court found that L.E. is mentally ill, is a proper subject for treatment, and there is a substantial likelihood that L.E. would be a proper subject for commitment if treatment is withdrawn.  As a result, the circuit court entered an order extending L.E.'s involuntary commitment for a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). In an October 11, 2019 order, the court placed this case on the expedited appeals calendar, and the parties have submitted memo briefs.  *See* WIS. STAT. RULE 809.17(1).  L.E.'s notice of appeal was filed approximately 100 days before the date of this opinion, with L.E.'s reply brief filed approximately three weeks before the date of this opinion.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

period of twelve months. In addition, the court ordered involuntary medication and treatment during the period of involuntary recommitment.[2] L.E. appeals.

¶4     I discuss additional material facts, including the relevant evidentiary hearing testimony, in the discussion that follows.

## DISCUSSION

¶5     L.E. challenges the circuit court's determination that the County met its burden of proof for the extension of her involuntary commitment. Before addressing L.E.'s claim, I briefly explain the standard of review and the statutory framework for the extension of an involuntary commitment.

### I.  Standard of Review and the Statutory Framework for the Extension of an Involuntary Commitment.

¶6     Review of a WIS. STAT. ch. 51 involuntary commitment presents a mixed question of fact and law. This court upholds a circuit court's findings of fact unless those are clearly erroneous. *Waukesha Cty. v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. Whether those facts fulfill the statutory requirements for an involuntary commitment presents a question of law that this court reviews de novo. *Id.*

---

[2] In her briefs to this court, L.E. contends that she is also appealing the circuit court order for involuntary medication and treatment. However, L.E. does not present this court with any argument concerning that order which is separate from her arguments concerning the sufficiency of the evidence supporting the circuit court's order extending her involuntary commitment. Accordingly, I do not address the medication order. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 933 (C.t App. 1992) (stating that this court will not decide issues that are inadequately briefed).

¶7     This case concerns the extension of an involuntary commitment. The criterion for extending an involuntary commitment is governed by WIS. STAT. § 51.20(13)(g). That paragraph is read together with the criterion set forth in § 51.20(1)(a). Under § 51.20(1)(a), a circuit court may order the initial commitment of an individual if the petitioner shows, by clear and convincing evidence, that the individual is:

   (1) mentally ill;

   (2) a proper subject for treatment; and

   (3) currently dangerous under one of five alternative dangerousness
       standards.

*See* § 51.20(1)(a)1. and 2.a.-e. and (13)(e); ***Portage Cty. v. J.W.K.***, 2019 WI 54, ¶¶17, 24, 386 Wis. 2d 672, 927 N.W.2d 509; *see also* WIS JI—CIVIL 7050. With regard to the third prong noted above, § 51.20(1)(a)2.a.-e. identifies five separate dangerousness standards, each of which includes a requirement of recent acts or omissions demonstrating that the individual is a danger to herself or others. *See* § 51.20(1)(a)2.a.-e.; ***J.W.K.***, 386 Wis. 2d 672, ¶17.

¶8     Once an individual is subject to a WIS. STAT. ch. 51 commitment order, the petitioner (in this case, Portage County) may, before the expiration of the initial commitment, petition for the extension of that commitment under WIS. STAT. § 51.20(13)(g)3. *See* ***J.W.K.***, 386 Wis. 2d 672, ¶18. In order for the extension to be granted, the petitioner must prove by clear and convincing evidence that the individual is: (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous. *See* § 51.20(1)(a) and (am), and (13)(e) and (g)3.; ***J.W.K.***, 386 Wis. 2d 672, ¶¶18, 24. Proof of the third prong (dangerousness) is the point at

which an initial commitment and a recommitment may materially differ. On a petition for recommitment, the petitioner may show that the individual is dangerous under § 51.20(1)(am). *See J.W.K.*, 386 Wis. 2d 672, ¶19 (stating that § 51.20(1)(am) "provides a different avenue for proving dangerousness").

¶9 WISCONSIN STAT. § 51.20(1)(am) provides in relevant part:

> If the individual has been the subject of inpatient treatment for mental illness … immediately prior to commencement of the proceedings as a result of … a commitment or protective placement ordered by a court under this section … the requirements of a recent overt act, attempt or threat to act under par. (a)2.a. or b., pattern of recent acts or omissions under par. (a)2.c. or e., or recent behavior under par. (a)2.d. may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

Our supreme court has held that § 51.20(1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19. Although dangerousness remains an element to be proven to support the extension of an involuntary commitment, § 51.20(1)(am) "functions as an alternative evidentiary path" for showing dangerousness, "reflecting a change in circumstances occasioned by an individual's commitment and treatment" and "acknowledg[ing] that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a.-e." *Id.*, ¶¶19, 24.

## II.  Analysis.

¶10    L.E. contends that the County failed to establish by clear and convincing evidence that she is dangerous.[3]  In response, the County argues that it put forth sufficient evidence at the evidentiary hearing to show that L.E. is dangerous under the standard set forth in WIS. STAT. § 51.20(1)(am).  I now recount the material testimony and the circuit court's findings.

### A.  Testimony and Circuit Court Findings.

¶11    Dr. Michael Galli, a clinical psychologist and independent evaluator, testified to the following at the evidentiary hearing.  Dr. Galli examined L.E. and reviewed "a variety" of L.E.'s records.  L.E. has been diagnosed with schizoaffective disorder, and "[t]he more blatant symptoms of that illness are … under control due to a variety of medications and to the supervising relationship [L.E.] has with the staff" at L.E.'s treatment facility.  L.E. does not acknowledge that she is mentally ill.  Rather, "[s]he thinks that she is not really in need of all [the] extra attention," and that L.E. has given "contradictory information about her understanding of her mental illness and her need for treatment."  When Dr. Galli met with L.E., she showed symptoms of her mental illness, including digressive thinking, confusion about her status, mood instabilities and "difficulties … keeping her thoughts organized."  Dr. Galli answered affirmatively when asked if L.E. "would become a proper subject for commitment in the future" if treatment were to end.  Dr. Galli explained that L.E. had "within the last year," required treatment at "a more restrictive placement," the Winnebago Mental Health

---

[3] L.E. does not contend that the County failed to meet its burden of showing that she is mentally ill or that she is a proper subject for treatment.  *See* WIS. STAT. § 51.20(1)(a)1.

Center,[4] because L.E. "had become unable to be managed within the community … due to the symptoms of her mental illness," and he opined that "if treatment were to stop, it's very likely given the symptoms [he] saw that [L.E.'s] condition would worsen to the extent that she would again require that kind of an intervention." No other witness testified at the evidentiary hearing.

¶12     At the end of the evidentiary hearing, the circuit court found that L.E. had been placed in inpatient treatment in the past twelve months, that L.E. "does not show a continuing understanding of her mental illness," that L.E. "denies the mental illness," and that L.E. "is likely to stop medication if the commitment is not continued and that would result in further hospitalization." Based on these facts, the court determined that L.E. "is dangerous in that … should treatment be withheld, [L.E.] would likely be the subject of a commitment."

¶13     L.E. argues that the County did not show that she is dangerous because the County failed to present evidence that she "was at risk of physical impairment or injury based on impaired judgment or that she placed anyone else at such a risk" or "that there was a substantial likelihood that such behavior would recur if treatment were withdrawn." For the following reasons, I am not persuaded by L.E.'s arguments.

**B.  Forfeiture of Argument.**

¶14     L.E. asserts that the County did not specify in its pleadings or during the recommitment trial which paragraph of WIS. STAT. § 51.20(1)(a)2. the County

---

[4]  Dr. Galli testified that Winnebago Mental Health Center is a "locked facility."

alleged L.E. was dangerous under, and that the circuit court did not specify which paragraph under which it found L.E. dangerous. To the extent that L.E. is arguing that the County and the court's failure to specify which paragraph she was dangerous under was error, L.E. has forfeited her right to raise this argument on appeal because she failed to raise that issue before the circuit court. *See State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995) (stating that a failure to raise a specific challenge before the circuit court forfeits the right to raise that challenge on appeal).

¶15     L.E. was not required to raise the question of sufficiency of the evidence in the circuit court. The issue of sufficiency of the evidence may be raised for the first time in an appeal from a recommitment order. *See* WIS. STAT. § 51.20(15) (stating that appeals from a recommitment order are governed by WIS. STAT. RULE 809.30); RULE  809.30(2)(h) (stating that sufficiency may be raised for the first time on appeal). However, it is apt to note the arguments made and not made by L.E.'s attorney in the circuit court. At the conclusion of the testimony at the evidentiary hearing, L.E.'s attorney argued only "about choice of care providers, choice of setting" rather than sufficiency of the evidence for the recommitment presented by the County. Specifically, L.E.'s attorney only raised the questions of whether L.E. should be placed in a different group home, and that L.E. wanted different social workers and "treatment team that she might be more compatible with." The only argument from L.E.'s attorney regarding the sufficiency of the evidence supported the County's position:  "[L.E.] really does not deny that she could benefit from some help and some assistance." With that context, I now consider L.E.'s argument regarding sufficiency of the evidence.

## C. The Evidence Was Sufficient to Support the Circuit Court's Order Extending L.E.'s Involuntary Commitment.

¶16 When reviewing whether evidence was sufficient to support findings made by the circuit court without a jury, this court will not reverse those findings unless those are contrary to the great weight and clear preponderance of the evidence. *See* ***Cogswell v. Robertshaw Controls Co.***, 87 Wis. 2d 243, 249, 274 N.W.2d 647 (1979).

¶17 A person is dangerous within the meaning of WIS. STAT. § 51.20(1)(a)2.c. if the individual has "such impaired judgment …that there [was] a substantial probability of physical impairment or injury to himself or herself." Sec. 51.20(1)(a)2.c. Dr. Galli testified that, for the following reasons, L.E. would be a proper subject for commitment if treatment is withdrawn. L.E. does not believe that she suffers from a mental illness, she believes that the medication she takes is unnecessary, and her mental illness symptoms became so serious within the twelve months preceding the recommitment hearing that she was hospitalized for inpatient treatment at a locked facility. The circuit court found the testimony of Dr. Galli credible, and there is nothing in the record to suggest otherwise.[5] I conclude that the above-mentioned evidence was sufficient to prove that L.E.'s judgment was so impaired that there was a substantial probability of L.E. suffering physical impairment or injury (that she would be "dangerous") if treatment was withdrawn.

---

[5] This court may not overturn a fact finder's credibility assessments unless those are inherently or patently incredible, or in conflict with the uniform course of nature or with fully established or conceded facts. *See* ***Chapman v. State***, 69 Wis. 2d 581, 583, 230 N.W.2d 824 (1975).

¶18 In addition, other evidence in the record available to the circuit court at the time of the evidentiary hearing supports the court's findings. *See* ***Royster-Clark, Inc. v. Olsen's Mill, Inc.***, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 ("Moreover, we search the record not for evidence opposing the circuit court's decision, but for evidence supporting it.") A transcript from a previous recommitment hearing regarding L.E. – which involved the same circuit judge who made the decision now on appeal – contains testimony from a psychiatrist which details the dangerousness L.E. exhibits when her treatment is withdrawn. Those problems include a worsening of her "psychotic illness" and bouts of "severe decompensation." During those times when she is not on her medication, L.E. refuses to take other medications that are needed to maintain her health, including insulin and high blood pressure medication. Further, when she is noncompliant with medications, her mental illness becomes worse to the point where she has difficulty caring for herself, an example being that she begins "defecating on herself." At that previous hearing, the circuit court found that testimony to be credible. This testimony was available to the circuit court at the time of the most recent recommitment hearing and also establishes that L.E. is a proper subject for commitment if treatment is withdrawn because she is dangerous to herself.

¶19 Accordingly, I conclude that the evidence was sufficient to support the circuit court's order extending L.E.'s commitment and, thus, affirm that order.

## CONCLUSION

¶20 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

10

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.