COURT OF APPEALS
DECISION
DATED AND FILED

January 5, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1843-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CM258

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

MICHAEL LOUIS VONSCHRADER,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.[1] The State appeals an order granting Michael VonSchrader's motion to suppress evidence obtained after VonSchrader was ordered out of his home at gun point by law enforcement.[2] The State concedes that VonSchrader was seized within his home, but it argues that the seizure was justified by exigent circumstances and probable cause. In the alternative, the State contends that the exclusionary rule does not apply to the evidence obtained after VonSchrader left his home because law enforcement had probable cause to arrest him. We conclude the State has forfeited its newly raised probable cause theories, and, therefore, the State's arguments fail. To the extent the State has not abandoned an earlier argument regarding the exclusionary rule, we reject that argument as well. Accordingly, we affirm.

## BACKGROUND

¶2     The State charged VonSchrader with four offenses: one count of operating a motor vehicle while intoxicated (OWI) as a second offense; one count of operating with a prohibited alcohol concentration as a second offense; one count of possession of a firearm while intoxicated; and one count of obstructing an

---

[1] The chief judge of the court of appeals converted this from an appeal decided by one judge to a three-judge panel by order dated March 3, 2022. *See* WIS. STAT. RULE 809.41(3) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Upon converting the appeal to a three-judge panel, we ordered the parties to serve copies of their briefs upon the Wisconsin Department of Justice (DOJ), and we asked the DOJ to advise whether it would stand upon the briefs already filed by the assistant district attorney or whether it would submit a supplemental brief. The DOJ opted to submit a supplemental brief. We rely almost entirely on that brief to discern the State's arguments because the DOJ largely abandoned the arguments previously made by the assistant district attorney.

[2] The State does not challenge the circuit court's order suppressing VonSchrader's statements after he was placed in handcuffs but before *Miranda* warnings were administered. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

officer. VonSchrader later moved to suppress all evidence obtained after law enforcement ordered him out of his home, arguing that law enforcement unlawfully seized him within his residence without a warrant.

¶3 The circuit court held two evidentiary hearings on VonSchrader's motion, hearing testimony from Oneida County Sheriff's Deputies Chris Coniglio and Mitchell Ellis. Coniglio and Ellis testified that they responded to a 3:00 a.m. report on July 21, 2019, regarding a disturbance involving several men and a naked woman who had run away from a residence "into the woods." Upon arriving at the residence, the deputies spoke with the reporting party and two other men.

¶4 The men reported that they had recently returned home from a nearby bar when they discovered the reporting party's fiancée in bed with VonSchrader—a man whom the reporting party knew personally from prior encounters. According to Deputy Ellis, the men reported that "some kind of altercation, verbal or other, [had] happened." Deputy Coniglio testified that the reporting party stated that VonSchrader had unsuccessfully attempted to punch him, that one of the other men then punched VonSchrader, and that the reporting party's fiancée had ripped a door off its hinges. The men told the deputies that the woman appeared intoxicated and that she had run away from the home without wearing any clothing. They also stated that VonSchrader had left the residence in a black Ford F-150 around the same time as the woman, and he appeared to have parked just down the road.

¶5 Out of concern for the woman's welfare, the deputies began searching for her in the surrounding area. When they were unable to locate her, they went to VonSchrader's residence. The deputies arrived at VonSchrader's

trailer home sometime around 4:00 a.m. As the deputies walked up to the home, Deputy Coniglio observed a male—later identified as VonSchrader—standing in the home using a cell phone.

¶6      The deputies stepped up onto the home's porch, knocked on an unshaded window near the front door, and shined lights on their uniforms to show that they were sheriff's deputies. VonSchrader looked at the deputies and gave "a 'hang on' or 'one minute' motion," but his attention returned to his cell phone. After the deputies continued knocking, VonSchrader walked to the side of the residence and picked up what Deputy Coniglio believed to be "a black pistol." Coniglio immediately yelled "[g]un" to alert Deputy Ellis, and they subsequently retreated for cover.

¶7      After taking cover behind some vehicles in the front yard, the deputies pointed their service weapons at the home and "began ordering [VonSchrader] out of the trailer with his hands up." VonSchrader eventually came out of the residence holding a cell phone and a beer. The deputies subsequently placed him in handcuffs. The deputies began asking VonSchrader questions, including where the unclothed woman had gone. Although VonSchrader was not cooperative at first, he eventually responded, "She's not here; you can look in the trailer if you want." According to Deputy Coniglio, when the deputies asked about VonSchrader having a handgun in the home, VonSchrader "did not give a definitive answer, just laughed." Deputy Ellis, on the other hand, recalled VonSchrader saying that the gun "was on the table in the residence." The deputies never entered the residence, and no gun was ever recovered.

¶8      Both deputies described VonSchrader as having slurred speech and an "odor of intoxicants coming from his person." The deputies subsequently

4

arrested VonSchrader for OWI and transported him to a different location to conduct field sobriety testing. After administering the field sobriety tests, Deputy Ellis took VonSchrader to the hospital for a blood draw.

¶9    In an oral ruling, the circuit court denied VonSchrader's motion to suppress evidence gathered after he left his home. In essence, the court concluded that the deputies' conduct was not unreasonable and that VonSchrader was not seized until he exited his home. Although the court ruled in the State's favor, the court rejected the State's argument that the deputies had "probable cause of criminal activity." The State had previously argued in its circuit court briefing and at the motion hearing that law enforcement had probable cause to believe VonSchrader committed an OWI offense and unlawfully possessed a firearm while intoxicated. Each of those probable cause theories was based, in part, on the officers smelling an "odor of intoxicants" and observing VonSchrader's slurred speech after he exited his home. The State did not argue any other theories of probable cause.

¶10    VonSchrader later filed a motion for reconsideration, arguing that he was constructively seized within his home. The circuit court agreed and concluded that there was a constructive entry because a reasonable person in VonSchrader's position would not have felt free to ignore the deputies' commands. The court also rejected the State's argument that the exclusionary rule should not apply to the evidence gathered from VonSchrader outside of his home. The court explained that the *Harris*[3] exception to the exclusionary rule requires "probable cause to arrest before the unlawful entry, [but the court] had already

---

[3] *See New York v. Harris*, 495 U.S. 14 (1990).

ruled that there was not probable cause prior to the deputies ordering Mr. [V]onSchrader out of his trailer." Accordingly, the court suppressed all evidence obtained after VonSchrader exited his home.

¶11 The State now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

¶12 Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; WIS. CONST. art. I, § 11. Absent exigent circumstances, the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576, 590 (1980). Furthermore, as relevant here, where a person does not wish to leave a location, such as a home, that person might be considered "seized" if a reasonable person would not "feel free to decline the officers' requests or otherwise terminate the encounter." *City of Sheboygan v. Cesar*, 2010 WI App 170, ¶13, 330 Wis. 2d 760, 796 N.W.2d 429 (citing *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). "Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is generally inadmissible in court proceedings." *State v. Scull*, 2015 WI 22, ¶20, 361 Wis. 2d 288, 862 N.W.2d 562.

¶13 We review a circuit court's decision on a suppression motion using a two-part standard of review. *State v. Adell*, 2021 WI App 72, ¶14, 399 Wis. 2d 399, 966 N.W.2d 115. We will uphold a circuit court's findings of historical fact unless they are clearly erroneous, and we independently apply constitutional

principles to those facts. *State v. Felix*, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775.

¶14 The State concedes in its supplemental brief that the "deputies seized VonSchrader within his home by ordering him outside at gunpoint." The State nevertheless argues that the seizure was lawful because it "was supported by probable cause and justified by exigent circumstances." In the alternative, the State argues that the circuit court erred by suppressing certain evidence because the *Harris* exception to the exclusionary rule applies.

¶15 Before addressing these arguments directly, we must first address the issue of probable cause, which is a necessary component of both of the State's arguments. The State argues that the deputies had probable cause to arrest VonSchrader before ordering him out of his home. In particular, on appeal, the State contends that the deputies could have reasonably believed that VonSchrader probably committed the crimes of attempted battery and disorderly conduct because the reporting party said that VonSchrader had attempted to punch him.

¶16 In response, VonSchrader argues that the State has "waived" this probable cause argument. He contends that the State never argued—and the circuit court never considered—whether the deputies had probable cause to arrest VonSchrader *before* he was seized within his home.

¶17    "Arguments raised for the first time on appeal are generally deemed forfeited."[4]  *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633 (citation omitted).  "The purpose of the forfeiture rule is to enable the circuit court to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency."  *State v. Counihan*, 2020 WI 12, ¶26, 390 Wis. 2d 172, 938 N.W.2d 530.  The forfeiture rule also encourages attorneys to diligently prepare for and conduct court proceedings, and it "obviates the need for appeal."  *Id.*, ¶¶26-27.  Thus, "[w]e will not … blindside [circuit] courts with reversals based on theories which did not originate in their forum."  *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).

¶18    The State has indeed argued new theories of probable cause for the first time on appeal.  In the circuit court, the State argued that the deputies had probable cause to arrest VonSchrader for the crimes of: (1) possession of a firearm while intoxicated; and (2) OWI.  Both of these theories were based, in part, on the deputies' observations (an "odor of intoxicants" and slurred speech) *after* VonSchrader exited his home.  The State, however, never argued—as it does now—that there was probable cause to arrest based on the crimes of attempted battery or disorderly conduct *before* VonSchrader was seized in his home.  Thus, not only has the State changed its argument regarding the crimes for which

---

[4] Past opinions have sometimes used the terms "forfeiture" and "waiver" interchangeably, but "the two words embody very different legal concepts." *Loren Imhoff Homebuilder, Inc. v. Taylor*, 2022 WI 12, ¶13, 400 Wis. 2d 611, 970 N.W.2d 831 (citation omitted).  Forfeiture involves "the failure to make the timely assertion of a right." *Id.* (citation omitted).  Waiver, on the other hand, "is the intentional relinquishment or abandonment of a known right." *Id.* (citation omitted).  This case involves a forfeiture because VonSchrader does not argue, nor does the record support a conclusion, that the State intentionally relinquished or abandoned the probable cause arguments now raised on appeal.

probable cause existed, but it has also changed its argument regarding when probable cause existed.

¶19 The State fails to acknowledge in its supplemental briefing that it is advancing new probable cause theories, and it even seems to imply that it had made these arguments to the circuit court. Specifically, after highlighting evidence that supports its current probable cause theories, the State asserts that when "[p]resented with this evidence, the circuit court decided the deputies had only reasonable suspicion of illegal behavior … [and did] not [have] probable cause." The State even goes so far as to call the court's probable cause ruling "illogical," while ignoring the fact that the State never presented the court with its current probable cause theories. The State also ignores the fact that it never discussed the report of VonSchrader's attempted punch to a man in either its briefing or its oral argument in the circuit court. In fact, when recounting the facts in its brief opposing VonSchrader's motion to reconsider, the State said that the deputies learned of "a verbal altercation."

¶20 We conclude that the State has forfeited its new argument regarding probable cause. If the State had presented the circuit court with its current probable cause theories, the court could have avoided the alleged error, which, in turn, might have prevented the necessity of this appeal. In addition, if we were to consider and rule in favor of the State's probable cause arguments, we would risk blindsiding the circuit court with a reversal based on theories that did not originate in its forum. *See Rogers*, 196 Wis. 2d at 827.

¶21 Of course, forfeiture is a rule of judicial administration, and a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue. *See Town of Mentor v. State*, 2021 WI App 85, ¶48, 400

Wis. 2d 138, 968 N.W.2d 716. A forfeiture may be disregarded "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision." *Marotz v. Hallman*, 2007 WI 89, ¶16, 302 Wis. 2d 428, 734 N.W.2d 411. For several reasons, this is not a case where we can disregard the State's forfeiture.

¶22 First, the facts surrounding the State's current probable cause theories are not fully developed. Whether the facts of a particular case constitute probable cause is a question of constitutional fact. *State v. Mata*, 230 Wis. 2d 567, 570, 602 N.W.2d 158 (Ct. App. 1999). In other words, "the question of probable cause turns on the facts of the particular case." *Id.* at 572. Here, because the State never argued its current theories of probable cause, the circuit court never made specific findings of fact regarding what the deputies were told about VonSchrader's behavior during the alleged "altercation." VonSchrader points out this omission in his supplemental briefing, arguing that "the State relies upon what [it] assume[s] are factual findings," but "there were no such specific findings made by the circuit court." Indeed, the State relies solely on the deputies' testimony to support its probable cause arguments in its supplemental briefing; it does not cite any factual findings by the court.

¶23 The circuit court did acknowledge that "[t]here was certainly a disturbance that arose as a result of all this," and the court appeared to find the deputies' testimony generally credible. The court noted that the deputies had "at least reasonable suspicion to believe [VonSchrader] was in either a state of agitation, possibly intoxication, based on what they already knew from what they learned from the individual at the prior residence." But, again, the court never made any specific findings about what the deputies were told or what they

10

believed. Significantly, the deputies both testified that they went to VonSchrader's home to find the naked woman and to ensure her safety, and Deputy Coniglio agreed with defense counsel's suggestion that the deputies did not have probable cause to arrest VonSchrader before going to his home. One could therefore infer that the deputies themselves doubted the credibility of the reporting party's claim that VonSchrader had attempted to punch him. This inference would not be unreasonable, given that the reporting party had stated he just observed his naked fiancée in bed with VonSchrader.

¶24 "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990). Because the circuit court was not given a fair opportunity to make findings of fact regarding the State's current probable cause theories, we have not been presented with a clean question of law. Therefore, on this ground alone, we cannot disregard the State's forfeiture. *Marotz*, 302 Wis. 2d 428, ¶16.

¶25 Second, we cannot disregard the State's forfeiture because both parties have not briefed the State's new probable cause theories. Although VonSchrader could have addressed the State's new probable cause theories in his supplemental brief, he did not make an alternative argument to his "waiver" argument. The State might fault him for not doing so, but this second requirement for disregarding a forfeiture has plainly not been met. *See id.*

¶26 Third, the forfeited issues in this case are not of sufficient public interest to merit a decision. The legal issues raised in the State's supplemental brief (probable cause; exigent circumstances; and the *Harris* exception to the

exclusionary rule) involve the application of well-settled rules of law to a recurring fact situation; therefore, the issues are not novel or complex and would not warrant a published or authored opinion.[5]  *See* WIS. STAT. RULE 809.23(1)(b)1.  In addition, all of the charges against VonSchrader are misdemeanors, and there do not appear to be any identifiable victims of his alleged crimes, other than society in general.

¶27  In short, we cannot disregard the State's forfeiture in this case because the State's new probable cause theories involve questions of fact that we cannot resolve, the parties have not fully briefed the issue of probable cause, and the forfeited issues in this case are not of sufficient public interest.  *See Marotz*, 302 Wis. 2d 428, ¶16.

¶28  The State's failure to establish probable cause on appeal is fatal to each of its main arguments.  For a warrantless seizure inside of a home to be justified by exigent circumstances, the warrantless entry must also be supported by probable cause that the individual has committed a jailable offense.  *See State v. Weber*, 2016 WI 96, ¶¶19, 32, 372 Wis. 2d 202, 887 N.W.2d 554 ("[T]he State must 'show[] that the warrantless entry was both supported by probable cause and justified by exigent circumstances.'" (second alteration in original; citation omitted)).  Likewise, the *Harris* exception to the exclusionary rule applies only "where police had probable cause to arrest before the unlawful entry and warrantless arrest from a defendant's home."  *Felix*, 339 Wis. 2d 670, ¶42.

---

[5] Although we initially converted this appeal from a one-judge decision to a three-judge decision, thereby signaling that publication might be warranted, the State's supplemental brief largely abandoned its previous arguments and did not contest that VonSchrader had been seized within his home.

¶29 Because the State has forfeited its new probable cause theories and because it has abandoned its earlier probable cause theories,[6] the State cannot establish either an exigent circumstance exception to the warrant rule or the *Harris* exception to the exclusionary rule. Accordingly, we reject these arguments.

¶30 Finally, to the extent the State has not abandoned its argument in its original briefing that the exclusionary rule does not apply, we reject that argument as well. In its initial brief-in-chief, the State argued that the exclusionary rule did not apply because the deputies did not engage in reckless or deliberate misconduct when they reasonably believed "that VonSchrader posed an imminent threat to officer safety, and potentially, the missing fiancé[e]." The exclusionary rule applies where police conduct is "sufficiently deliberate that exclusion can meaningfully deter it, and [is] sufficiently culpable that such deterrence is worth the price paid by the justice system." *State v. Burch*, 2021 WI 68, ¶16, 398 Wis. 2d 1, 961 N.W.2d 314 (citation omitted). Police misconduct is sufficiently deliberate and can be effectively deterred through the exclusion of evidence where the conduct is "deliberate, reckless, or grossly negligent," or, in some circumstances, where the conduct involves "recurring or systemic negligence." *Id.*, ¶17 (citation omitted).

¶31 Here, the deputies' conduct was grossly negligent, if not reckless. The deputies did not have probable cause or a warrant to arrest VonSchrader, and they ordered him out of the sanctity of his home at gun point. As the circuit court recognized during the hearing on VonSchrader's motion for reconsideration,

---

[6] "[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned." *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

> [T]here's no information that's been presented to me to indicate that [VonSchrader] brandished or threatened a weapon against the officers or, for that matter, whether it was loaded—and there's still, at least based on the record in this case relative to this motion, a potential argument as to what exactly it was in [VonSchrader's] hand because apparently the officer[s] did not enter the dwelling at that time to locate the item ….

Accordingly, we conclude that the deputies' conduct should be and can be meaningfully deterred by the application of the exclusionary rule.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14